David J. MacCURDY, Plaintiff,

v.

UNITED STATES of America, Defendant.

Horace Terry MOCK, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. Nos. 719, 736.

United States District Court
N. D. Florida, Pensacola Division.
July 12, 1956.

J. B. Hodges, Lake City, Fla., for plaintiff David J. MacCurdy.

David H. Levin, Pensacola, Fla., for plaintiff Horace Terry Mock.

Hayford O. Enwall, Asst. U. S. Atty., Gainesville, Fla., for defendant, United States.

DE VANE, Chief Judge.

These suits were brought by plaintiffs against the United States under the Tort Claims Act, 28 U.S.C.A. §§ 1346,

2671–2680, to recover for personal and property damages resulting from a collision between an automobile owned by plaintiff David J. MacCurdy and driven by plaintiff Horace Terry Mock and a Government automobile operated by Airman Third Class Charlie A. Howell, stationed at Eglin Air Force Base and assigned to the 3201st Motor Vehicle Squadron. As the two cases arose out of the same automobile accident, they were consolidated for trial.

The two complaints allege that the negligence of Airman Howell in the operation of the Government automobile was the sole proximate cause of the accident. The Government answer in each case denies the negligence of Airman Howell. In the Mock case the Government also pleads contributory negligence and in the MacCurdy case claims that if the Government agent was guilty of negligence, MacCurdy can not recover on the ground that Mock was driving MacCurdy's automobile at MacCurdy's direction, and that any contributory negligence of Mock is also applicable to MacCurdy. The complicated record made in the cases by the parties makes the cases particularly difficult to briefly summarize.

Plaintiff MacCurdy, assigned to Headquarters, 3625th Maintenance and Supply Group, 4317 IC, Air Force Service Command, Tyndall Air Force Base, resided with his wife and two minor children at Route 2, Box 1061, Parker Florida. Sometime prior to October 8, 1955, MacCurdy had received orders relieving him from said assignment and ordered him to proceed to Parks Air Force Base, California, and thence to Japan for a permanent change of station. MacCurdy was the registered owner of a 1955 Chevrolet Sedan. On Saturday morning, October 8, 1955, MacCurdy departed his station at Tyndall Air Force Base for California pursuant to his movement orders, his plan being to proceed to Mobile, Alabama, by automobile and thence to California by train. He and his wife had arranged with plaintiff Mock to accompany them in MacCurdy's automobile to Mobile and to also drive Mrs. Mac-Curdy back from Mobile to Parker, Florida. The party left for Mobile shortly after 7:30 A.M., MacCurdy driving the automobile. On the outskirts of Mobile Mock took over the driving and took the party to his home, where they had coffee and sandwiches and where they remained until the time arrived to take MacCurdy to the train. After proceeding to the railroad station and bidding farewell to MacCurdy, Mock driving, with Mrs. MacCurdy, started back to Parker at about 4:00 P. M. Testimony shows they stopped at a service station somewhere between Mobile and Pensacola for gas. After crossing the long Pensacola Bay Bridge, they stopped and parked at a Pure Oil Station at Gulf Breeze, which is located about one mile east of the Pensacola Bay Bridge. It was then about 6:30 P. M. Wilson, the attendant, approached them and inquired if he could be of any service to them; whereupon, plaintiff Mock thanked him and told him that they had merely stopped to look at the automobile to see if they scratched it on the Bay Bridge while crossing same. Wilson testified he noticed, after they called it to his attention, the long scratch that had been made on the right front and rear fenders of the automobile. Wilson testified further that both Mock and Mrs. MacCurdy clearly showed evidence that they had been drinking and that after returning from their respective rest rooms, they together sat in the front seat of the automobile and each consumed a can of beer. Wilson testified that his station sold no beer and that neither Mock or Mrs. MacCurdy went to any other place while they were at his station to purchase same. When they had consumed the beer, they left the station, Mock driving. About thirteen miles east of this point on U. S. Highway 98 the accident involved in these cases occurred. Mrs. MacCurdy was killed as a result of the accident and Mock was severely injured. Mock testified to a complete lapse of memory from a time just prior to reaching the Pensacola Bay Bridge until he regained consciousness hours later in the Naval Hospital in Pensacola.

The only eyewitness offered by plaintiffs with reference to the accident was William L. Wisenhant and his testimony is somewhat confusing as will immediately appear from a detail thereof. He testified that he was traveling east on U. S. Highway 98 at a speed not greater than fifty miles per hour, observing strictly the night time law, Fla.St. § 317.-22(2) (c), F.S.A. with reference to speed on the public highway in Florida at night. He testified that another was following him and that the Government car driven by Howell was following that car. When they reached a long, clear, straight piece of highway, both cars attempted to pass him; that the first car succeeded in doing so, but that when the Government automobile came up alongside his automobile, he realized there was going to be an accident, slowed down and drove his automobile off the highway; that the Government automobile attempted to get back into its lane of travel, but failed to do so completely and that plaintiff MacCurdy's automobile operated by plaintiff Mock came in collision with the rear of the Government automobile, which resulted in the accident. He testified Mock was traveling at a speed of sixty miles an hour "maybe more, maybe less" at the time of the accident.

Before passing to other evidence bearing upon the accident offered by the parties, the Court considers it preferable to consider that part of Wisenhant's testimony that two automobiles were attempting to pass him at the same time, the Government car following close behind the other car. The driver of the Government car denies this. There was also another eyewitness to the accident who was a short distance behind the Wisenhant and Government car. This witness (Allen O. Treutel) testified that there was only one automobile following Wisenhant and that was the Government automobile. In addition the Government called two witnesses, who were traveling east on U. S. Highway 98 just prior to the accident, who testified that the MacCurdy car had passed each of them driving at a high rate of speed only a few minutes in advance of the accident and that no automobile had passed them traveling west between the time Mock passed them and the time they arrived at the scene of the accident. With this conflict in the testimony the Court is convinced that the question of the negligence of the operator of the Government car should be determined on the premise that the Government automobile was the only automobile that attempted to pass Wisenhant when the accident occurred. Wisenhant, in his excitement and confusion, evidently became mixed up on this one question. He was a completely disinterested witness and intentionally made no misstatement of facts.

There is no particular need to detail the testimony of the Government witnesses with reference to the question of the negligence of the Government agent Howell in operating the car at the time of the accident. The evidence shows, and counsel for the defendant concedes, that the rear left end of the Government automobile extended over into the line of traffic traveling east. Howell frankly admitted upon cross examination that he did not see the oncoming car until he was completely in its lane of travel and alongside the Wisenhant automobile and that his Government driving permit had recently been suspended for like illegal night passing. He clearly was not observant or was suffering with poor eyesight. For him to attempt to pass another automobile going in the same direction in which he was traveling when an oncoming automobile with its lights burning was coming in his direction was inexcusable negligence at night time. The Wisenhant and Treutel testimony also clearly establishes negligence on the part of the operator of the Government automobile.

The Court now passes to the question of contributory negligence on the part of Mock. The undisputed evidence in the case shows that the left front wheel of the MacCurdy automobile operated by Mock collided with the left rear of the Government automobile; that the left

front wheel of the MacCurdy automobile was seriously damaged and left visible evidence of skid marks made by the damaged wheel from the point of impact to the point where the MacCurdy automobile came to rest. The evidence further shows that the force of the impact knocked the Government automobile almost completely around so that when it came to rest it was on the south side of the highway pointing a little south of east. The MacCurdy automobile skidded out of control two hundred one feet and collided with a pine tree some distance from the paved portion of the highway. It was the impact with the pine tree that killed Mrs. MacCurdy and severely injured Mock.

After the Government had shown by its witness Wilson that both Mock and Mrs. MacCurdy appeared to have been drinking when they stopped at the service station where he worked and had shown the facts surrounding the accident, the Court then permitted the Government to introduce the testimony of two witnesses that were driving east on U. S. Highway 98 on the night of the accident just prior thereto and permitted these witnesses to testify as to the speed of the MacCurdy automobile then being operated by Mock at the time it passed these two other automobiles. They both testified that they were attracted to the automobile because of its speed and that they could identify the automobile because of its particular white top markings and that the automobile that had passed them was the automobile they saw "wrapped around the tree" at the scene of the accident. They each testified that Mock was driving the automobile at a very high rate of speed and considerably in excess of sixty miles an hour. The Court is fully aware that testimony of this character should be received with care and not considered unless a proper predicate has been laid for its introduction. But in this case, the Court has no doubt that these witnesses, being impressed with the speed at which Mock was driving, paid sufficiently close attention to the au-

tomobile to identify it later on when they saw it following the accident. Moreover, they both testified there was no other automobile that passed them between Mock's passing and the time of the accident. Under these circumstances, the Court gives weight to the testimony of these two witnesses and it gives weight to the testimony of witness Wilson that the conduct of plaintiff Mock and Mrs. MacCurdy while at the filling station where he worked clearly evidenced that these parties had been drinking prior to the time they stopped at his filling station and while there, consumed an additional can of beer each. Moreover, three physicians, who examined Mock shortly after the accident, testified they detected the odor of alcohol on his breath.

Based upon all the testimony, the Court is of the clear opinion that Mock was guilty of gross contributory negligence in this case, which defeats his right to recover. Comp. Autrey v. Swisher, 5 Cir., 155 F.2d 18. The injuries he received in the accident were severe and his pain and suffering has been great, but he incurred practically no expenses as he was cared for by the Government and his condition has improved to such an extent that he has returned to duty with the Government.

MacCurdy seeks damages in this case only for the loss of his wife and of his automobile. Ever since the decision of the Court in Southern Cotton Oil Company v. Anderson, 80 Fla. 441, 86 So. 629, 16 A.L.R. 255, the Supreme Court of Florida has adhered to the "dangerous instrumentality rule" there laid down and has in every case since, so far as this Court knows, held that the owner of an automobile is liable for negligent acts of any person operating his automobile with his knowledge or consent. In the more recent case of Lynch v. Walker, 159 Fla. 188, 31 So.2d 268, 271, the Florida Supreme Court said:

"When an owner authorizes and permits his automobile to be used by another he is liable in damages

for injuries to third persons caused by the negligent operation so authorized by the owner."

In this case Mock was driving this automobile at the request of MacCurdy and his negligence should be and is imputed to MacCurdy. The Supreme Court of Florida has never had a case exactly like this, but the general rule is that in actions for wrongful death compensation may not be recovered for the benefit of persons who concurred in the unlawful act which resulted in the injury and death. See 16 Am.Jur. Death, Sections 127 and 132; compare also Winner v. Sharp, Fla., 43 So.2d 634. This rule is based upon public policy and the principal that no one should be permitted to profit by his own wrong. The Court, therefore, holds that MacCurdy in this case has no right to recover against the defendant due to the contributory negligence of the person he placed in charge of his automobile and who had it in his complete control at the time of the accident.

Appropriate judgments in conformity with this Memorandum-Decision will be entered herein.