**David J. MacCURDY, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 16519.**

United States Court of Appeals
Fifth Circuit.

June 24, 1957.

Rehearing Denied July 27, 1957.

J. B. Hodges, Lake City, Fla., for appellant.

Joseph P. Manners, Asst. U. S. Atty.,
Harrold Carswell, U. S. Atty., Tallahassee, Fla., for appellee.

Before BORAH, RIVES and BROWN,
Circuit Judges.

RIVES, Circuit Judge.

Appellant MacCurdy, who was plaintiff below, brought this action under the Federal Tort Claims Act,[1] to recover for the death of his wife and the damage to his automobile, when a Government car driven by Airman Third Class Howell, of Eglin Air Force Base, collided with appellant's car, which was being driven by one, Mock, and in which appellant's wife was riding. The opinion of the trial court is reported at 143 F. Supp. 60.

MacCurdy, a sergeant in the United States Air Force, was ordered from Tyndall Air Force Base in Florida to Parks Air Force Base in California, thence to Japan for permanent change of station. On October 8, 1955, he and his wife and Mock left Tyndall Air Force Base and proceeded to Mobile, Alabama and spent the day in Mock's home. At about 4 P.M. MacCurdy entrained for California and Mrs. MacCurdy and Mock left Mobile to return to Parker, Florida. At a point about 14 miles easterly of the Pensacola Bay Bridge on U. S. Highway 98, the collision occurred.

The district court found that Howell was negligent in the operation of the Government vehicle and that such negligence was a proximate cause of the collision. But, it also found that Mock was guilty of negligence proximately contributing to the collision in that he had been drinking and was speeding at the time of the accident.[2] The court concluded that MacCurdy could not recover for the injuries to his automobile and the death of his wife because the negligence of Mock was imputable to him.

No good purpose would be served by an elaborate discussion of the evidence, a careful consideration of which has convinced us that the district court was not

1. 28 U.S.C.A. §§ 1346, 2671–2680.

2. See 143 F.Supp. 64.

"clearly erroneous" in any of its factual findings. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. Indeed, we are in full agreement with each of those findings.

The appellant insists that the district court erred in denying his motion, made after the evidence was closed, to strike the testimony of some six witnesses.[3] While we think that all of this evidence was admissible, we do not feel called upon to discuss it because the trial court was clearly not guilty of any abuse of discretion in refusing to strike the testimony of these witnesses after it had been admitted without objection. Head v. Texas Rawhide Paving Co., 5 Cir., 22 F.2d 554; Limbick v. Interstate Power Co., 8 Cir., 69 F.2d 249, 251; 53 Am.Jur., Trial, Sec. 152; 88 C.J.S. Trial § 136; cases collected in "Key Numbered" Digest under Trial ⊚⇒93.

The complaint sought recovery of damages for the plaintiff MacCurdy individually and further alleged that, "The plaintiff is also the Administrator of the estate of his said wife and the natural guardian of said minor children," and sought the recovery of damages suffered by the minor children and by the estate of the deceased. At the close of the evidence, however, the plaintiff abandoned any effort to recover damages other than those suffered by the plaintiff individually, including the funeral expenses which he had paid.[4]

The defendant then insisted that the negligence of the driver Mock was imputable to the plaintiff MacCurdy and that by reason thereof MacCurdy was barred from recovery of damages. In an action for wrongful death under a statute such as Section 768.02, Florida Statutes, 1951, F.S.A., for the recovery of compensatory damages to the husband individually (see Lithgow v. Hamilton, Fla., 69 So.2d 776, 778), it would seem clear that contributory negligence imputable to the sole beneficiary might operate to defeat recovery. See Winner v. Sharp, Fla., 43 So.2d 634; 16 Am.Jur., Death, Sec. 132; 2 Restatement of Torts, Sec. 493; 25 C.J.S. Death § 46b, pp. 1141–1143.

Did then such a relationship exist between the plaintiff MacCurdy and the driver Mock as would cause Mock's negligence to be imputed to the plaintiff and bar his recovery? The district court answered that question in the affirmative upon the basis of the Florida "dangerous instrumentality" rule, first enunciated in Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 74 So. 975, L.R.A.1917E, 715, and in Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 16 A.L.R. 255. The appellant insists that the Supreme Court of Florida has not been called on to hold and that this Court

3. "Mr. Hodges:
  "The plaintiff, MacCurdy moves the court to strike the testimony, all and singular, of the Doctors Mantero, Cassidy, Rakov and of the witnesses Wilson, Meadows and Malley, upon the following grounds.
  "1. No proper foundation was laid for its admission.
  "2. The testimony is irrelevant and immaterial as to the issues on behalf of the plaintiff MacCurdy.
  "3. The facts as revealed in the cross-examination and direct examination of the witnesses are too remote in point of time to have any bearing on the issues that relate to the plaintiff, MacCurdy."

4. "Mr Enwall:
  "I would like to make a motion in the case of MacCurdy vs. The United States and in that connection do I understand correctly from counsel, that counsel takes the position in the matter now that the suit is simply for the recovery by the plaintiff MacCurdy for his loss of his wife and for the damages to his automobile?
  "Mr. Hodges:
  "And for funeral expenses. The case of Lithgow v. Hamilton, 69 So.2d 776, sets forth the measure of damages to the present theory of the plaintiff.
  *  *  *  *  *
  "Mr. Enwall:
  "Am I correct that plaintiff MacCurdy is abandoning that aspect of his cause of action relative to claim for damages to the estate of the deceased?
  "Mr. Hodges:
  "Yes sir, I have become convinced little or nothing can be recovered in that connection."

should not hold that the "dangerous instrumentality" rule applies "in reverse" so as to *defeat* the recovery of the owner because of the negligence of the driver, and relies upon some of the cases, construing *statutes* making the owner responsible for negligence of the driver of a motor vehicle and holding that contributory negligence of the driver is not imputable to the owner, collected in an annotation in 11 A.L.R.2d 1429. As there shown, the question is one of interpretation of the particular *statute*, and, as is to be expected, different statutes have been differently construed. See, also, 2 Restatement of Torts, Sec. 485, p. 1268. In the absence of statute, the general principle is that:

> " * * * a plaintiff is barred from recovery by the negligent act or omission of a third person if, but only if, the relation between them is such that the plaintiff would

be liable as defendant for harm caused to others by such negligent conduct of the third person." 2 Restatement of Torts, Sec. 485, p. 1267.

See, also, Prosser, Law of Torts, 2nd ed., Sec. 54, p. 300.

The Florida "dangerous instrumentality" rule is not statutory, but has been evolved from the common law. In the late case of May v. Palm Beach Chemical Co., 77 So.2d 468, 472, the Florida Supreme Court discussed at length "the theory upon which liability is imposed in Florida when the owner of an automobile allows another to operate it on the public highways with his knowledge and consent", and held that, *"liability is bottomed squarely upon the doctrine of respondeat superior arising from a principal and agent relationship implied in law."* [5]

5. "A study of the origin and application of the doctrine of vicarious liability on the part of an automobile owner shows clearly that whatever may be the limitations of its scope of application, *liability is bottomed squarely upon the doctrine of respondeat superior arising from a principal and agent relationship implied in law.* In the pioneer case of Herr v. Butler, 101 Fla. 1125, 132 So. 815, 816, it was squarely held that the owner of an automobile is liable 'under the doctrine of respondeat superior as applied to dangerous agencies' for damages caused by its negligent operation by one to whom he entrusts it—citing Southern Cotton Oil Company v. Anderson, 80 Fla. 441, 86 So. 629, 16 A.L.R. 255. That this was not a fortuitous statement is made clear by the concurring opinion in the case, agreed to by the majority of the court, which makes the following analysis of the matter:

" 'The doctrine of respondeat superior is not always limited to cases where the strict relationship of master and servant exists, but may apply in cases where the relationship is that of principal and agent only. * * * the operator in lawful possession of the car with the consent of the owner in effect operates the car under the authority of the owner's license to use the highways pursuant to Florida statute law, as well as for the benefit of such owner *whose agent the operator is*, at least to the extent of properly control-

ling the car * * * and returning it safely back to such owner who intrusted it.' (Emphasis supplied.)

"In Engleman v. Traeger, 102 Fla. 756, 764, 136 So. 527, 531, it is said '* * * the legal effect of our statutes relating to automobiles, and the requiring registration and operation in the name of the owner, is not to *change* the rule "respondeat superior", nor to create or recognize in Florida a different rule of liability thereunder from that which prevails in other states. The only effect our holdings have is to recognize that in so far as the operation of an automobile on the highways is concerned, that the owner stands always, *as a matter of law*, in the relation of "superior" to those whom he voluntarily permits to use his license and to operate his automobile on the highways under it * * *. So it is on the principle of "respondeat superior" that the owner of an automobile must answer for the negligence of those who operate his automobile under his license, with his knowledge or consent, express or implied. In view of our regulatory laws, an automobile owner will not be permitted to refute the relationship which is implied in law when it appears that such automobile owner has permitted [operation by another].'

"While the subsequent decisions on the point have been numerous and, perhaps, sometimes confusing, note in Vol. V, No. 4, Florida Law Review, p. 412, there has

There are many other facts and circumstances tending to show that Mock was acting as an agent or servant for MacCurdy in driving his wife from Mobile, Alabama, to her home in Parker, Florida. The sufficiency of such other facts and circumstances was not ruled on by the district court, nor do we find it necessary to do so, for under the Florida "dangerous instrumentality" rule there is a principal-agent or master-servant relationship between the driver and the owner of the automobile, as a matter of law. Under such relationship, Mock's negligence is imputed to the plaintiff MacCurdy and bars his recovery. The judgment is therefore

Affirmed.

---

been no significant departure in the cases from the above rationale. Therefore, the conclusion is inescapable that whatever distinctions may be attempted between the two relationships, the basis for liability in this agency-implied-in-law,

arising from the operation of an automobile with the owner's knowledge and consent, is the same as in the ordinary principal-agent or master-servant status * * *." May v. Palm Beach Chemical Company, Fla., 77 So.2d 468, 472, 473.