M. O. ENGLEMAN, *Plaintiff in Error,* v. JOE TRAEGER and SPIRO ANTOS, partners doing business under the trade name of the Great Southern Motor Club, *Defendants in Error.*

136 So. 527.

Division B.

Opinon filed August 6, 1931.

Petition for rehearing denied September 15, 1931.

*Shipp, Evans & Kline,* for Plaintiff in Error;

*Herbert S. Sepler,* for Defendants in Error.

PER CURIAM.—The plaintiff in error whom we will refer

to as the plaintiff, brought an action against the defendants in error whom we will refer to as the defendants for damages for the death of his son Whitney Engleman, a young man about twenty years old. The first count alleges that the defendants were engaged in operating trucks along and upon the public highways in the County of Dade and State of Florida; that Arthur Williams on December 25th, 1928, was

"driving an automobile for and on behalf of the said defendants as their servant, agent and employee, and in the course of his employment and in the service of the defendants"

and that he negligently and carelessly drove said automobile upon and against Whitney Engleman and injured him so seriously that he died from the effect of his wounds.

The second count alleges that the defendants operated

"for the use and convenience of their agents, servants and employees, a certain automobile, and permitted and authorized the use and operation of said automobile by their said agents, servants and employees for the purpose of transporting themselves from defendants' place of business to their homes and the homes of their parents or relatives in and near Miami, Florida, and to return therefrom to their employment at defendants' place of business; that on said date said automobile was being run and operated by their agent, servant and employee in and upon the streets of the City of Miami, County of Dade, State of Florida, with the permission of and by the authority of said defendants, for transporting himself from the home of his parents or relatives in or near the City of Miami to his place of employment, to-wit, the place of business of said defendants in the City of Miami.

"That said defendants' automobile being so run and operated by their agent, servant and employee, and at a time and place and with the permission and authority of the defendants as aforesaid, and within the scope of his authority as such agent, servant and employee, to-wit, in transporting himself back to the place of business of said defendants, so carelessly and negligently run, drove and operated said automobile, and without any

negligence on the part of plaintiff's son, Whitney Engelman, * * * that the same came in contact with and did strike against the said Whitney Engelman, the infant son of the plaintiff, with great force and violence thereby bruising, wounding and injuring the said Whitney Engelman by reason whereof the said Whitney Engelman on December 25, 1928, died killed by the wrongful act, negligence and carelessness and default of said agent, servant and employee of the defendants acting in his capacity as such agent, servant and employee.''

The case was tried on pleas of not guilty, contributory negligence, a plea denying that Williams at the time of the accident was the agent of defendants and a plea that alleged that the automobile at the time of the accident was being operated without the consent, knowledge, or acquiescence, express or implied, of the defendants, and the trial resulted in a verdict for the plaintiff. The defendants made a motion for a new trial and the same was granted by the court, to which ruling the plaintiff excepted and the case is here for review upon writ of error.

It seems that the owners of the motor vehicle had been the employers of one Arthur Williams, who was driving it at the time of the accident. Williams worked until noon of Christmas day and desiring to get off for the balance of the day, he was paid the wages that were due him by his employers and they loaned him the machine to be used for his pleasure—not in their business—and he was to return it, according to the testimony of the defendants, at six o'clock that afternoon. The accident occurred about seven o'clock in the evening. The evidence sustains the theory that the fatal injury was due to the negligent operation of the said motor car by Arthur Williams, and fails to show contributory negligence on the part of Whitney Engelman. It is the contention of the defendants that the driver of the automobile was not at the time of the accident using the machine as the agent or servant of the defendants, but at most, Williams was merely a bailee. Upon the theory that a bailor of an automobile, even though such automobile is a dan-

gerous instrumentality, is not liable for a tort committed by a bailee in the use of such instrumentality, the lower court granted a new trial.

But the alleged bailment is not such as was involved in White v. Holmes, 89 Fla. 251, 103 So. 623, where this Court held that where one keeps an automobile for hire, and in the usual course of business, hires the automobile without driver to another, who in operating the car injures a third person, the owner of the car is not liable for damages to the injured party for the negligent operation. Such bailments as were referred to and specially dealt with in that case are expressly permitted by the automobile license laws of the State. The controlling statute contemplates that special licenses may be issued under which cars can be hired to another under such circumstances as to divest the owner of all control and consequent responsibility for negligent operation, in the case of these particular bailments.

As has been several times pointed out, the only way in which an automobile can be lawfully operated on the highways of the State of Florida is under a State license and bearing a State license tag which can only be issued to the *owner* of the car. See sections 1280 C. G. L. et seq., 1006 R. G. S. et seq.

The owner of an automobile, as we expressly held in Herr v. Butler, 101 Fla. 1125, 132 Sou. 815, and cases following it, cannot make it possible for another to operate an automobile on the highways *lawfully* under his (the owner's) license, and then escape the responsibility for what the operator negligently does in operating the car, while the car is thus being operated under the owner's license and with the owner's permission, or with his knowledge or consent.

Such holding is but an application of the well known doctrine of *respondeat superior*—the effect of our statutes requiring the licensing of automobiles for operation on the

highways being to prohibit all operation except under State license and State identifying tags, and to make owners of automobiles who knowingly entrust their cars to others responsible for what such others do under authority of the license which is granted only to the owner and limited to the owner and those who act for him.

It may be conceded that the law is to the effect that the mere fact of ownership of a vehicle will not establish a liability of the owner for injuries resultant from the misuse or negligent operation by one to whom the owner has loaned it, and that something more than ownership is ordinarily required to establish agency or the relation of master and servant between the owner and the borrower. New York Plate Glass Ins. Co. vs. Martines, 55 Utah 292, 184 Pac. 819. It has never been disputed by any holding of this court that for a person to be responsible for the operation of an automobile, he must be the owner of the car which is operated by some one under his authority and permission, or he must have control of the operation of the car. Tyree v. Tudor, 183 N. C. 340, 111 S. E. 714. Nor has it been held in Florida that the mere fact that the instrumentality in question is an automobile has *per se* set up a new rule with regard to how the relationship of principal and agent or master and servant and the rule of liability controlling these relationships is to be applied. We think it may still be safely affirmed that where it is sought to hold one person responsible and civilly liable for the torts committed by another, it must be made to appear by competent evidence that the relationship of principal and agent or that of master and servant existed between the two at the time the tort was committed, and, in addition to that, that the tortious act complained of was committed in the course of the employment of the servant, or was within the scope of the agency.

The true rule applicable in cases of this kind was forcibly stressed by MR. JUSTICE TERRELL in the opinion of

this Court in Warner vs. Gooding, 91 Fla. 260, 107 So. 406, when he said in that opinion:

> "The majority opinion in Southern Cotton Oil Co. vs. Anderson (80 Fla. 441, 86 So. 629) has been interpreted by some as a departure from or modification of the doctrine of respondeat superior, but it was not so intended."

The other earlier cases of Eppinger & Russell Co. v. Trembly, 90 Fla. 145, 106 So. 879, as well as Southern Cotton Oil Co. v. Anderson, 73 Fla. 432, 74 So. 975, L. R. A. 1917-E 715; also 80 Fla. 441; 86 So. 629, 16 A. L. R. 255, have all consistently followed and applied the rule of "respondeat superior" in upholding the liability of the owner of an automobile for negligent injuries inflicted by one who operates it with his permission, knowledge or consent.

But the rule of "respondeat superior" has necessarily a broader application to a case where the owner of an automobile, which can only be lawfully operated on the public highways of the State under a special license and bearing a conspicuous identifying tag, entrusts it to another to operate under such owner's license and tag, than to an instance were the owner of a horse and buggy, or a hammer or wheelbarrow (none of which have been declared subject to special statutory regulations as to use), entrusts such horse and buggy, hammer or wheelbarrow to another to use or operate.

The rule of the common law which was originally applicable to ox carts, horse-drawn vehicles and bicycles may still be required by our legal doctrine of "stare decisis" to be applied at this late day to the automobile and aeroplane of modern civilization, but it by no means follows that such common law must be applied to new situations with the same degree of strict construction and narrow limitations. Such rules as this cannot just be applied to such a dangerous instrumentality in operation as an automobile or an aeroplane in exactly the same way as it would be ap-

plied to an innocuous thing like an ox cart, horse and buggy, bicycle or wheelbarrow.

In this connection it is of interest to demonstrate that the weight of authority in the United States has favored many different, though varying, applications of these ancient rules of the common law when required to be considered in connection with claims of liability asserted with regard to the negligent operation of motor vehicles. In many decided cases the courts have often made a more liberal application of these rules to automobiles than they have applied to less dangerous instrumentalities.

For example, every court in the land has recognized the liability of an automobile owner for damages resulting when he entrusts his car to a person who is drinking and likely to become intoxicated while operating it. This has been so held in spite of the fact that no one would suggest that the same owner by lending an intoxicated neighbor his hammer or his wheelbarrow would thereby incur the same kind of liability that he would incur as an automobile owner should the loaned hammer or wheelbarrow be afterwards negligently used by the intoxicated person who borrowed it. See Crowell v. Duncan, 145 Va. 489, 134 S. E. 576; Mitchell v. Churches, 119 Wash. 547, 206 Pac. 6, 36 A. L. R. 1132.

The socalled "family purpose" doctrine of liability of automobile owners which has lately become established in a majority of the States, rests on a like principle—namely, that while the *common law rule* of liability remains the same, the application of such rule may be broadly different when considered in connection with the peculiar conditions surrounding the operation and licensing of automobiles. Certainly the "family purpose" rule would not be the case with some less dangerous machine like a mowing machine not coming while in use into such intimate contact with the general public in a public place such as a highway.

As one court stated in adopting and following the "fam-

ily purpose'' rule (Hutchins v. Haffner, 63 Colo. 365, 167 Pac. 966, L. R. A. 1918-A, 1008) :

"The adoption of any rule contrary . . . . would, in many instances, deprive the injured party of any remedy, owing to the usual financial irresponsibility of the owner's wife or child who may have been driving the automobile, at the time of the accident.''

The statutes of Florida as an exercise of the police power, undertake to regulate automobiles and particularly their operation on the public highways. As is well known, these highways are built for heavy traffic and rapid speed. Traveling by automobile is promiscuous and general and the attendant congestion of traffic increases the risk and augments the danger to all automobile operators while using the highways.

It is well recognized, so well in fact, that it is common knowledge, that the *owner* of an automobile because of his purchase price investment in the value it has, and also because of the fact that he usually wishes to enjoy its uninterrupted use (the seeming necessity of which use grows upon the average car *owner* to the point that the use of his car seems indispensable), will for that reason if no other in all likelihood, operate it with a reasonable degree of care, in order that his use of the car may not be lost by its being injured or destroyed by accident.

For this reason, and in apparent recognition of the influence that *ownership* has on the operation of an automobile, the statutes of this State from their earliest days have provided for registration of motor vehicles in the name of *owners* only. Furthermore, the statutes require not only registration in the name of the *owner* only, but likewise compel the owner at all times while the car is in operation, to have affixed to it an identifying tag in order that its number may be readily seen and thereby the ownership of the car traced in the event of accident or improper use.

Thus the *owner* of a licensed automobile which carries his identification tag, who knowingly and deliberately en-

trusts such automobile to another to use, makes it legally possible for such other to enjoy the owner's license and privilege of traveling the highways, the use of which is intended to be granted exclusively to the owner, and those who operate the car for him.

To recognize any rule by which such owner, through a real or pretended bailment of his car to a stranger, except as is provided by the statute, could escape the liability which should attend his authority to another to operate under the owner's non-transferable license a motor vehicle upon the public highways of this State, would be to practically defeat the statutory intent and purpose which is obvious in requiring cars to be registered in the name of the owner and to carry about in a conspicuous place thereon the identifying tags of the owners.

So the legal effect of our Statutes relating to automobiles, and the requiring registration and operation in the name of the owner, is not to *change* the rule *"respondeat superior"*, nor to create or recognize in Florida a different rule of liability thereunder from that which prevails in other States.

The only effect our holdings have is to recognize that in so far as the operation of an automobile on the highways is concerned, that the owner stand always, *as a matter of law,* in the relation of "superior" to those whom he voluntarily permits to use his license and to operate his automobile on the highways under it, or those whom he allows to do so with his knowledge and consent. Like all cases of this kind, there is an exception, as we have pointed out. Such exception has been recognized in the particular case where the statute expressly permitted a bailment for hire, under which the bailee was allowed to procure and operate a hired car as if he were the owner. Under this exception all liability was transferred to him which would thus have attended his actual ownership if it had existed.

So it is on the principle of *"respondeat superior"* that

the owner of an automobile must answer for the negligence of those who operate his automobile under his license, with his knowledge or consent, express or implied. In view of our regulatory laws an automobile owner will not be permitted to refute the relationship which is implied in law when it appears that such automobile owner has permitted, with his knowledge and consent, another's operation of such automobile on the highways which only the owner, as owner, or some one acting for him, may lawfully do.

We have made the foregoing exhaustive review of our previous holdings, as well as some of the holdings of other jurisdictions, principally in order to again restate, as was done in Warner v. Gooding, *supra,* that this Court adheres to its previously announced rule that the owner of an automobile is responsible for the manner in which it is used on the highways, and that the owner's liability extends to its use by any one else *with his knowledge or consent, express or implied.* (Herr v. Butler, 101 Fla. 1125, 132 So. 815; Dowling v. Nicholson, decided January Term, 1931).

As hereinbefore stated, ''Where it is sought to hold one person responsible and civilly liable for the torts committed by another, it must be made to appear by competent evidence that the relationship of principal and agent, or that of master and servant, existed between the two at the time the tort was committed and in addition thereto that the tortious act complained of was committed in the course of the employment of the servant, or within the scope of the agency.'' But, to recover under either condition the plaintiff must allege in the declaration the relationship of the parties according to the facts which will be developed by the evidence. The plaintiff cannot allege the relationship of principal and agent and recover on proof of the relationship of master and servant. Neither can the plaintiff allege the relationship of master and servant and recover on proof of the existence of the relationship of principal and agent, which was attempted to have been accomplished in this

case. Here the declaration alleged that one Arthur Williams was then and there driving an automobile for and on behalf of the said defendants as their servant, agent and employee, and in the course of his employment and in the service of the defendants the said automobile so driven as aforesaid, etc.

The proof shows that at the time of the accident Arthur Williams was not the servant of the defendants and was not then employed by the defendants but was on an entirely private mission and was using a truck belonging to the defendants with their knowledge and consent and was the agent of the defendants only to the extent that when the defendants allowed Arthur Williams to drive the truck on the public highway they constituted him their agent for the management and control of the truck.

As the relationship of master and servant did not at the time exist as is alleged in the declaration, there was a material difference between the allegata and probata.

Therefore, there was no error in the order granting a new trial. The same is affirmed.

Affirmed.

BUFORD, C.J., AND WHITFIELD AND DAVIS, J.J., concur.

ELLIS, TERRELL AND BROWN, J.J., concur in the conclusion.

ELLIS, J., concurring in conclusion:—The statute providing for certificate of ownership of automobiles and the operation of automobiles, in this State, in my opinion, has no application in this case, the doctrine of respondeat superior applies alike to the relation of master and servant and principal and agent. The declaration states a case under the doctrine of respondeat superior but the evidence does not sustain it. The plaintiff may recover if at all on the ground that defendants were joint tort feasors.

BROWN, J., concurring:—While concurring in the conclusion reached, I cannot concur in some of the reasoning employed. See dissenting opinion in Herr v. Butler, 132

So. 815, and 3 R. C. L., 78-80, 145-146; 2. R. C. L. 1200, 22 A. L. R., 1397 et seq.; 36 A. L. R. 1138; 68 A. L. R. 1008.