159 So.2d 654 (1963)
Gerald W. PRICE, Appellant,
v.
FLORIDA POWER AND LIGHT CO., a Florida corporation, Appellee.
No. 3354.
District Court of Appeal of Florida. Second District.
December 13, 1963.
Rehearing Denied January 29, 1964.
*655 Michael K. Davis, of Watson, Hubert & Sousley, Fort Lauderdale, for appellant.
Norman C. Roettger, Jr., of Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellee.
SMITH, Chief Judge.
This is an appeal from a final judgment in favor of the defendant, Florida Power and Light Company, and against the plaintiff, Gerald W. Price, entered after the court granted the defendant's motion to dismiss the first amended complaint for failure to state a cause of action.
Price alleged facts to the effect that he was an employee of Harlan Electric Company; that Harlan contracted with the defendant, Florida Power & Light Company, to construct and energize an electrical distribution system in a new subdivision by connection with the defendant's high voltage transmission system; and that all poles, lines, and electrical current were owned by the defendant, who placed them in the control of Harlan, its contractor. Price alleged that in the course of such project he was on a pole for the purpose of insulating an electrical wire which was strung from another pole 200 or 300 feet away and attached to the second pole by a standard insulated connection; that at the same time there were also attached to the second pole wires which were energized with high voltage electrical current; and that it was the plan of construction to energize the wire upon which plaintiff was working by connecting it to the existing energized wires on the second pole only when complete installation of all wires and apparatus necessary to a proper and safe electrical *656 circuit were completed, but that while Price was working on pole No. 1, the same was not completed. It was alleged that while Price was so engaged, certain other employees of Harlan climbed to the top of pole No. 2 and proceeded to make preparations for attachment of the energized wire to the wire on which Price was working; that such other employees negligently allowed a jumper wire to touch or come so close as to cause an electrical arc across both wires, thereby energizing the wire on which Price was working and causing the injuries alleged. Price further alleged that the negligence of Harlan's other employees was concurrent with the negligence of Harlan and concurrent with the negligence of the defendant power company.
Price then alleged that Harlan and its employees were exercising control over the poles, wires and electrical current with the knowledge, permission, authorization and consent of the defendant power company; and that his injuries were directly and proximately caused by the negligence of the defendant power company, in that (1) the power company knew of the great danger inherent to work done on or around wires charged with high voltage electricity; (2) it knew that pole No. 2 carried wires so energized and that Harlan's employees would be upon said pole to attach the new wires and energize them with the energized wires existing on pole No. 2; and (3) it knew or should have known that any mistakes made in construction or energization would be likely to cause great peril to employees of Harlan near said new distribution system. It was further alleged that the defendant power company owed to plaintiff a duty to exercise a high degree of care to provide safe working conditions; and that such duty was negligently breached, in that (1) the power company allowed and permitted Harlan's employees to go upon pole No. 2 to construct and energize the new distribution system without proper supervision and control by the defendant; (2) the defendant power company negligently failed to provide insulation of wires and to de-energize terminal points so that the terminal connections could be made without danger; and (3) the defendant negligently failed to de-energize the wires on pole No. 2 by means of switches in the distribution system, which would have allowed the work to be performed without danger. Finally, it was alleged that, although the defendant knew or should have known of the great possibility of harm that would be caused by any premature or improper energization of the new distribution system, and although the defendant knew or in the exercise of due care should have known of the circumstances of the construction alleged that made possible the premature and improper energization, the defendant negligently failed to exercise due care in providing safe working conditions for Price, and such negligence was the proximate cause of the injuries suffered by plaintiff.
Price contends that his amended complaint stated a cause of action under three theories of law; that is, the amended complaint alleges facts showing (1) negligence on the part of the defendant power company, (2) the defendant power company was vicariously liable for the negligence of Harlan and Harlan's other employees under the dangerous instrumentality doctrine, and (3) the defendant power company was liable for injuries caused by the negligence of the independent contractor Harlan and its other employees because the work being performed was inherently dangerous. Since the lower court's judgment must be reversed, we find it necessary to discuss each of these theories.
The plaintiff first contends on appeal that his amended complaint stated a cause of action because it alleged facts to the effect that the defendant negligently failed to perform its duty to supervise and control its contractor and to exercise due care in providing safe working conditions for the plaintiff. Plaintiff concedes that the general rule is that one who is having work done on his premises by an independent contractor *657 is obligated only to use ordinary care to provide reasonably safe working conditions for the employees of the independent contractor.[1] Plaintiff, however, relies upon an exception to such general rule, which exception is stated in Ahearn v. Florida Power and Light Company, Fla. App. 1961, 129 So.2d 457, 461, as follows:
"* * *. [W]hile a power company is not required to become an insurer or to provide an absolutely safe place to work, it is under a definite requirement to exercise a high degree of care with reference to its invitees.
"* * *. [A]n employee of an independent contractor engaged in performing services pursuant to contract between his employer and a power company is that company's invitee; and this relationship, together with the hazardous work involved, results in a duty by the power company `to exercise the highest degree of care possible, commensurate with the business engaged in.' Vanlandingham v. Florida Power & Light Co., 1944, 154 Fla. 628, 18 So.2d 678, 679. Further, the law requires of a power company the exercise of a high degree of care to provide safe working conditions for the employees of an independent contractor. What will constitute a discharge of that duty will depend upon the circumstances. Florida Power & Light Co. v. Robinson, Fla. 1953, 68 So.2d 406. * * *"
This amended complaint does not allege facts to state a cause of action within the principles of law enumerated in Ahearn and other authority there cited. Such a cause of action must be stated by allegations: (1) that the power company had actual or constructive knowledge of the condition which caused the injury; (2) that the condition constituted a latent danger; and (3) that the plaintiff did not have actual or constructive notice of the danger. While the complaint here does allege facts to the effect that the power company had actual knowledge that the distribution line attached to pole No. 2 was energized and that the power company knew Harlan's employees would be upon said pole to attach the new wires to the energized system, there is no allegation to the effect that it knew this would be done prior to complete installation necessary to a safe electrical circuit. There are no allegations of fact showing that the plaintiff was without actual or constructive knowledge of the danger existing because of the work of his fellow employees on pole No. 2. The amended complaint alleges that the contract required energizing of the line, but there are no allegations of fact from which it may be concluded that the energizing of the line in the manner contemplated in the contract constituted a latent danger; to the contrary, the amended complaint alleges that the plan of construction was to make the new wires safe before energizing.
The plaintiff next contends that his amended complaint stated a cause of action because the defendant's electrical power is a dangerous instrumentality or agency, and the defendant was vicariously liable for the negligence of the defendant's contractor. By this point, the plaintiff in effect says that electrical energy is a "dangerous instrumentality", and the owner who entrusts it to another should be liable for injury caused to third persons by the negligence of the person to whom it was entrusted, as was held with respect to automobiles operated on the public highways in Southern Cotton Oil Company v. Anderson, 1920, 80 Fla. 441, 86 So. 629. In presenting this point, plaintiff concedes at the outset that he and his negligent fellow employees are employed by Harlan Electric Company and not by the defendant, and that Harlan Electric Company was the independent contractor of the defendant. Plaintiff further concedes that in the ordinary case the employee of an independent contractor does not have a cause of action against an owner contracting with the independent contractor.
*658 Beginning with the decision in the Southern Cotton Oil case, supra, the courts of Florida have consistently held that:
"The general rule applicable to dangerous agencies is that one who keeps in his possession, or employs in his business, that which unless carefully guarded and used, is dangerous to others, is bound to exercise proper care to see that it is so kept and used as not to inflict injury; and the negligence of any one into whose care it is committed by the owner, either in failing properly to guard it, or in improperly using it, is that of the owner.
"[Quoting from 6 La Batt, Master and Servant § 2503] * * * `There is often much difficulty in determining what constitutes a dangerous agency; but when once its character as such is established, a master may be held liable, not on the ground that he is master, but because he is a person employing the agency. To state that he cannot shift responsibility to his servants in respect to such agencies is merely to say the same thing in another way.'" Crenshaw Bros. Produce Co., Inc. v. Harper, 1940, 142 Fla. 27, 194 So. 353.
This general rule, commonly referred to as the dangerous instrumentality doctrine, has been applied numerous times since 1920 in cases involving automobiles and trucks. In Western Union Telegraph Co. v. Michel, 1935, 120 Fla. 511, 163 So. 86, the Supreme Court indicated that a motorcycle would come within the doctrine, and in Engleman v. Traeger, 1931, 102 Fla. 756, 136 So. 527, the court stated that this doctrine would be applied in airplane cases. This Court, in Shattuck v. Mullen, Fla.App. 1959, 115 So.2d 597, classified the airplane with the automobile as a dangerous agency when in operation. No cases have been cited to this Court, nor has our independent research disclosed any, where the dangerous instrumentality doctrine was applied in Florida to electricity. However, as the Supreme Court stated in the Southern Cotton Oil case, supra:
"The rule is not a new one, and, far from being the enunciation of `a judicial statute,' as intimated by counsel for plaintiff in error, it is but the application of an old and well-settled principle to new conditions. * * *
"* * *
"It is true that, in the early development of this very salutary doctrine, the dangerous agencies consisted largely of fire, flood, water, and poisons. In Dixon v. Bell, 5 Maule & S. 198, Lord Ellenborough extended the doctrine to include loaded firearms. With the discovery of high explosives, they were put in the same class. As conditions changed it was extended to include other objects that common knowledge and common experience proved to be as potent sources of danger as those embraced in the earlier classifications. * * *" (80 Fla. 445-446, 86 So. 631.)
We can perceive no logical basis for classifying the automobile, airplane, motorcycle, fire, flood-water, poison, loaded firearms and explosives as dangerous instrumentalities, and excluding electricity from that classification. The courts of Florida have often said, in effect, that the generation and distribution of electrical energy is highly dangerous to life and property. The decisions in cases which charged negligence on the part of the power company resulting in injury to an employee of an independent contractor,[2] and those involving the duty of care for the safety of the employees of an electric power company,[3] while not *659 specifically applicable to the dangerous instrumentality doctrine, do refer to the inherent dangers in the generation and distribution of electricity. The Legislature has classified those generating and selling electricity as persons engaged in a hazardous occupation. § 769.01, Florida Statutes, F.S.A. In other jurisdictions, electricity has been often referred to as highly dangerous,[4] and wires charged with electricity have been held to be "dangerous instrumentalities."[5] We conclude that a highvoltage electrical transmission system is a dangerous instrumentality.
The courts of Florida have made it clear that it is not possible for an owner of a dangerous instrumentality to insulate himself from liability by the device of an independent contractor relationship, since, as a matter of law, such responsibility of control cannot be delegated and can be terminated only by conversion, theft, or by otherwise relinquishing the right to determine control of the agency.[6]
Having determined that the generation and distribution of electric energy has been recognized as a dangerous agency, and that the dangerous instrumentality doctrine, initially established in Florida with reference to motor vehicles, was intended to be applied to any other dangerous instrumentality, we conclude that the doctrine must be applied to the distribution of electricity. The plaintiff's amended complaint stated a cause of action because the plaintiff set forth allegations to the effect that: (1) the power company was the owner of the dangerous instrumentality; (2) it entrusted that instrumentality to the control of a third party; and (3) the negligence of such third party in its control of the instrumentality was the proximate cause of the plaintiff's injury.
The plaintiff further contends that the defendant power company, having employed an independent contractor to perform the inherently dangerous work of constructing and energizing an electrical power distribution system, was liable for injuries cause by the negligence of the independent contractor in the performance of the work. This is a further exception to the general rule as to independent contractors,[7] and is closely related to the "dangerous instrumentality doctrine." This exception comes into play where the work which the independent contractor is to perform is inherently or intrinsically dangerous. As to such work, liability cannot be evaded by employing an independent contractor  unless proper precautions are taken. The taking of these precautions, it is said, is a non-delegable duty owing to third persons who may sustain injuries from the work; and in such instances, the contractor is considered an agent or servant for whose act his employer is responsible. Whether work of a given character is to be regarded as inherently or intrinsically dangerous is to be determined by applying the test of whether *660 danger inheres in the performance of the work; and it is sufficient if there is a recognizable and substantial danger inherent in the work, even though a major hazard is not involved. 57 C.J.S. Master and Servant § 590. We are of the view that a jury would be justified in finding that danger was inherent in the energizing of the system under the facts alleged in the complaint. The inherent danger of this work is quite similar to the work held to be inherently dangerous in Person v. Cauldwell-Wingate Company, 2nd Cir.1949, 176 F.2d 237. This work was of such a nature that in the ordinary course of events its performance would probably, and not merely possibly, cause injury if proper precautions were not taken. In such a case, an owner is liable for injuries caused by the failure of an independent contractor to exercise due care in respect of the performance of the work. This principle of law is no less controlling in actions brought by an employee of the independent contractor than in actions brought by a third party. See Annotation, 23 A.L.R. 1084, at 1129, and cases there cited. See also Greer v. Callahan Const. Co., 1925, 190 N.C. 632, 130 S.E. 739. The amended complaint stated a cause of action within this principle of law.
In arriving at this conclusion, we have carefully considered the opinion of the Supreme Court of Florida in Gulf Refining Company v. Wilkinson, Fla. 1927, 94 Fla. 664, 114 So. 503. The decision does not purport to deal with the principle of law here involved, that is, the doctrine of inherently dangerous work; furthermore, the Court did state there that under the pleadings and evidence, the rules governing the sale or handling of explosives were not applicable. In this connection, however, the Court called attention to the following quotation from 25 C.J. 197:
"By the weight of authority it seems that a principal is not liable for the negligence of an independent contractor although the work to be done is intrinsically dangerous so long as no negligence can be imputed to him in employing such contractor and the work itself is lawful and will not necessarily result in injury to another. There is, however, considerable authority to the contrary. * * *"
We note that the Court itself made it clear that the foregoing discussion as a whole was obiter dictum. Moreover, we find that the above quotation was taken from section 24(5) of the Corpus Juris encyclopedic statement of the law under the title "Explosives." A complete reading of that section, and of the case references there made, discloses that the prevailing view was to the contrary. The statement is in direct conflict with the statement appearing in the Corpus Juris encyclopedic treatment of the law of Master and Servant: "A very important exception to the general rule exempting the contractee from liability for injuries caused by the negligence of an independent contractor or his servants is that, where the work is * * * `inherently' or `intrinsically' dangerous, unless proper precautions are taken, liability cannot be evaded by employing an independent contractor to do it." 39 C.J., Master and Servant, § 1540, p. 1331. That the above-mentioned statement in 25 Corpus Juris at 197 was erroneous is made more apparent by the republication of the same encyclopedia, 35 C.J.S. Explosives § 8e, p. 281, where the subsection is headed by the statement: "Generally, both the independent contractor and his employer are liable for injuries resulting from blasting operations conducted by an independent contractor." Reference is there made to 57 C.J.S. Master and Servant § 590, to which this Court has herein referred. Thus, this encyclopedia has now reconciled the inconsistency in its former publication by clearly stating the general rule, and the exception to the general rule, to be as we have heretofore stated.
The judgment is reversed.
*661 ALLEN, J., concurs.
BARNS, PAUL D., Associate judge, concurs specially.
BARNS, PAUL D., Associate Judge, specially concurring.
I fully concur that the appellant's amended complaint states a cause of action against the defendant based on the following principles of law:
In the Restatement of Torts it is stated:
"§ 427. Negligence in Doing Inherently Dangerous Work.
"One who employs an independent contractor to do work which is inherently dangerous to others is subject to liability for bodily harm caused to them by the contractor's failure to exercise reasonable care to prevent harm resulting from the dangerous character of the work."
Prosser's Law of Torts (2d ed.) § 64 p. 357 states:
"The employer of an independent contractor may be liable for any negligence of his own in connection with the work to be done. But the common law `rule' has been that he is not liable vicariously for the torts of the contractor. To this rule certain `exceptions' have been developed, which indicate a tendency to place the contractor upon the same footing as a servant. The more important exceptions are:
"a. Where the employer is under a duty to the plaintiff which the law considers that he is not free to delegate to the contractor.
"b. Where the work to be done is inherently dangerous to others, or will be dangerous to others, or will be dangerous unless particular precautions are taken.
"Even under these exceptions, it is commonly held that the employer will be liable only for risks inherent in the work itself, and not for `collateral' negligence of the contractor."
In this State the foregoing general principles of tort liability have been applied to the generating and selling of electricity to the extent that an employee of an independent contractor engaged in performing services pursuant to contract between his employer and electric power company is the power company's invitee, and that relationship, together with the hazardous work involved, results in a duty by the power company to exercise the highest degree of care possible, commensurate with the business engaged in. Vanlandingham v. Florida Power and Light Co., 1944, 154 Fla. 628, 18 So.2d 678, Ahearn v. Florida Power and Light Co., Fla. 1961, 129 So.2d 457, 461. Cf. Person v. Cauldwell-Wingate Company, 2nd Cir.1949, 176 F.2d 237.
The vicarious liability of an owner of an automobile for torts occasioned by the negligence of a bailee seems to be anomalous and sui generis, an off-shoot of law relating to dangerous instrumentalities, and not within limitations of the general law of bailment of dangerous instrumentalities. Lynch v. Walker, 1947, 159 Fla. 188, 194, 31 So.2d 268, 271, states:
"`Ordinarily when one bails an automobile to another and such other negligently injures a third person, liability as a matter of substantive law is not essentially dependent upon the relationship of "master and servant", "principal and agent", or "license".'
"In all these different relationships there appears a common and basic factor to wit: When an owner authorizes and permits his automobile to be used by another he is liable in damages for injuries to third persons caused by the negligent operation so authorized by the owner.

*662 "By reason of the doctrine of stare decisis liability under the foregoing circumstances has been so repeatedly and consistently adhered to by the decisions that it has become law.
"Liability as thus established has often been referred to as the `law of dangerous instrumentalities' which may not be literally correct  an automobile is a dangerous instrumentality and it is the law of respecting automobiles. We are not advised that such liability in relation to automobiles has been extended to all dangerous instrumentalities."
NOTES
[1] See discussion in 57 C.J.S. Master and Servant § 603.
[2] Vanlandingham v. Florida Power & Light Co., 1944, 154 Fla. 628, 18 So.2d 678; Florida Power & Light Co. v. Robinson, Fla. 1953, 68 So.2d 406; Ahearn v. Florida Power and Light Co., supra.
[3] City of Jacksonville v. Glover, 1915, 69 Fla. 701, 69 So. 20; Jacksonville Electric Co. v. Sloan, 1906, 52 Fla. 257, 42 So. 516; Teddleton v. Florida Power & Light Co., 1941, 145 Fla. 671, 200 So. 546.
[4] Electricity has been defined as "that mysterious element * * * which, although invisible to the eye, wields a force capable of illuminating the world, propelling machines of fabulous complexity, transporting incalculable weights, and destroying or crippling life." Cooper v. Heintz Manufacturing Company, 1956, 385 Pa. 296, 122 A.2d 699, 700. "Electricity is * * *" one of the most insidious and dangerous agencies known to man. * * *" Harrison v. Kansas City Electric Light Co., 1906, 195 Mo. 606, 93 S.W. 951, 958. For numerous other definitions of like character, see 1 Florida Words and Phrases, "Electricity," pp. 335-336.
[5] Detroit Edison Co. v. Ewing, 6th Cir.1941, 122 F.2d 852; Hayden v. Paramount Productions, 1939, 33 Cal. App. 287, 91 P.2d 231.
[6] May v. Palm Beach Chemical Company, Fla. 1955, 77 So.2d 468; Crenshaw Bros. Produce Company, Inc. v. Harper, supra; Palmer v. R.S. Evans, Jacksonville, Inc., Fla. 1955, 81 So.2d 635; Susco Car Rental System of Florida v. Leonard, Fla. 1959, 112 So.2d 832; Lynch v. Walker, 1947, 159 Fla. 188, 31 So.2d 268; Fleming v. Alter, Fla. 1953, 69 So.2d 185; Williams v. Smelt, Fla. 1955, 83 So.2d 1.
[7] See discussion in 57 C.J.S. Master and Servant § 584.