Paul Bensman, By William Bensman, His Father and Next Friend, Appellant, v. Edgar M. Reed, Appellee.

532

Opinion filed March 13, 1939.

JACOBY & DALY and EMERSON BAETZ, both of Alton, for appellant.

GEERS & GEERS, of East St. Louis, for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

Plaintiff, a minor, by his next friend instituted this suit against Edgar M. Reed and John W. Reed, to recover damages for personal injuries sustained when the automobile driven by John W. Reed, but owned by Edgar M. Reed collided with a motorcycle upon which plaintiff was riding as a guest. Plaintiff dismissed the suit as to John W. Reed before trial, and the case proceeded against Edgar M. Reed. Plaintiff secured a verdict for $4,500 but the court entered a judgment for defendant *non obstante veredicto*.

John W. Reed is the son of defendant Edgar M. Reed. At the time of the accident John was 21 years of age and resided with his father. With the consent of the father he drove the father's automobile for purposes of his own and at the time of the accident was engaged on such a trip. At the age of 6 John suffered the complete loss of his left eye and serious damage to the right.

Plaintiff does not contend that there was any relationship of master and servant or principal and agent

existing between the defendant and John and concedes that the "family purpose" doctrine is not the law of this State. Plaintiff's theory is that the accident was caused by John's negligence and that he committed the negligent act by reason of his defective vision; that the defendant knew of John's defective vision and knew that it rendered him an incompetent driver and that having permitted John to drive his automobile under such conditions he is now answerable to plaintiff in damages.

The only question presented is as to the correctness of the court's ruling entering a judgment for defendant *non obstante veredicto.*

It is well established that an automobile is not so dangerous an agency as to make the owner liable for injuries caused by it regardless of the agency of the driver and that it is not dangerous *per se, Arkin v. Page,* 287 Ill. 420 and the owner who merely permits another to use it for his own purpose is not liable for the negligence of the person so using it, *White v. Seitz,* 342 Ill. 266; *Andersen v. Byrnes,* 344 Ill. 240.

The question presented involves other considerations. It must be recognized as an undisputable fact that an automobile with all its capabilities for power and speed does when being driven by an incompetent or reckless driver become an instrument of potential danger.

If an incompetent or reckless driver while driving the automobile of another for his own purposes commits an act that causes the automobile to damage another, the action or movement or the failure to act that caused the automobile to commit the injury was the act of the driver, but the owner's permission for the incompetent driver to drive his automobile supplied the instrumentality, the use of which combined with the negligent act of the driver caused the injury. The permission of the owner sets in motion one of the agencies which makes possible the commission of the negligent act.

There is a well-founded principle of law that an owner of property has a duty to use his property so as not to injure another and it is but a sequence of that rule that places the duty upon the owner to deny permission to another to drive his automobile for his own purposes when he knows such person is an incompetent or reckless driver or by the exercise of reasonable diligence he could have known of such incompetency or recklessness.

The only Illinois case cited or that we have been able to find bearing upon this question is *Union Bank of Chicago v. Kalkhurst,* 265 Ill. App. 254 where the court said, ''Where the owner intrusts such a machine to an inexperienced or incompetent person, liability for damages may arise.'' The weight of authority as shown by the following cases supports these conclusions: *Robertson v. Aldridge,* 185 N. C. 292, 116 S. E. 742; *Crowell v. Duncan,* 145 Va. 489, 134 S. E. 576, 50 A. L. R. 1425; *Elliott v. Harding,* 107 Ohio St. 501, 140 N. E. 338, 36 A. L. R. 1128; *Priestly v. Skourup,* 142 Kan. 127, 45 P. (2d) 852; *Brady v. B & B Ice Co.,* 242 Ky. 138, 45 S. W. (2d) 1051; *Slaughter v. Holsomback,* 166 Miss. 643, 147 So. 318; *Tanis v. Eding,* 265 Mich. 94, 251 N. W. 367; *Gardiner v. Solomon,* 200 Ala. 115, 75 So. 621; *Mitchell v. Churches,* 119 Wash. 547, 206 Pac. 6.

The liability of the owner does not arise by merely proving that he gave permission to an incompetent driver to drive his automobile but it must also appear that the incompetency alleged was the proximate cause of the commission of the negligent act which caused the injury. In this case the incompetency alleged is John's defective vision and as one of the elements of a cause of action it was incumbent upon plaintiff to prove that John's negligent act in the management of the car was caused by his incompetency arising out of defective vision.

In the consideration of this question the trial court and this court cannot weigh and determine controverted questions on the weight of the evidence. We are limited to a consideration of whether there is evidence to sustain plaintiff's case and to give the plaintiff the benefit of all the facts that the evidence tends to prove and all just inferences that can be drawn therefrom and to consider as true the evidence which is most favorable to plaintiff. *Pollard v. Broadway Cent. Hotel Corp.*, 353 Ill. 312; *Libby, McNeil & Libby v. Cook*, 222 Ill. 206; *Blumb v. Getz*, 366 Ill. 273.

The evidence shows that from the time of John's injury and the complete loss of the left eye at the age of 6 until he was 15 the vision of the right eye was impaired. During that period he studied and took his school work by means of the Braille system. At 15 his eye had improved and he attended the public schools and took his school work from books in common use. After he was 15 and continuing until the time of the accident he drove automobiles on various occasions, not only in his home, city of Alton, but made a trip or two to St. Louis and various other places.

Plaintiff introduced the evidence of two of John's schoolmates who testified that they had seen him walk fast and "bump" into other students. One who lived near John's home testified to having seen him backing an automobile out of his yard and that he came near backing into him.

During the trial plaintiff's attorney propounded certain questions which were in the nature of a test as to his ability to discern and correctly describe certain objects in the courtroom. Some of these tests were made without glasses and it is apparent that without glasses the vision of his right eye is impaired. The tests made with glasses appear to have been as accurate as would be expected from a person with one

eye. With glasses he readily told the number of spectators in the first row, the number of jurors in a certain row, the color of their clothing and the color of the clothing worn by the attorney examining him.

The accident happened about 10:30 at night on an east and west street in Alton. The parties were going in opposite directions. Just before the collision John was driving in an easterly direction some distance from the curb on his right. He was following a car and he suddenly turned to his left, crossed the center line of the pavement and collided with the motorcycle. The motorcycle had 3 lights. John testified he saw these lights more than a half a block away. There is no evidence contradicting him on that point. He testified that he saw the car ahead, also a car parked near the curb to his right, that the lights were burning on it and that he thought it was leaving the curb and that he turned his car to the left to avoid a collision with it.

Dr. Middleton, an eye specialist, testifying for defendant stated that he examined John's eye about 6 months prior to the accident and he gave it as his opinion that the vision of John's right eye with glasses was almost normal and that he could read at a distance of 20 feet the same letters that the normal eye could read. He stated that his vision for driving was equal to that of any one-eyed person with a normal eye. It appears that John always wore glasses.

It is our conclusion that there is no evidence which tends to prove that John's defective vision was the cause of his negligent act. It may be conceded that he was negligent in making the turn at the time and under the circumstances he did but this does not establish that such negligent act was caused by defective vision.

For the reasons given the judgment of the trial court is affirmed.

*Judgment affirmed.*