523 So.2d 1215 (1988)
Alice F. GORDAY, As Guardian of James Thomas Brown; and James Thomas Brown, Individually, Appellants,
v.
Darrell FARIS, a/k/a Chris Faris, and Jerry M. Faris, Appellees.
No. BR-88.
District Court of Appeal of Florida, First District.
April 7, 1988.
Rehearing Denied May 11, 1988.
William H. Davis of Wadsworth & Davis, Tallahassee, for appellants.
William H. Hughes, III and D. Lloyd Monroe, IV of Fuller & Johnson, P.A., Tallahassee, for appellees.
SMITH, Chief Judge.
Appellants, Alice Gorday and James Thomas "Tommy" Brown, seek review of the trial court's final summary judgment entered in favor of appellees, Darrell, a/k/a Chris, and Jerry Faris, in a tort action predicated on the theory of negligent *1216 entrustment of an automobile. Appellees' motion for summary judgment claimed entitlement to a judgment of no liability based solely on the ground that plaintiffs' action was barred by the doctrine of express assumption of risk. Appellants urged below, and here, that express assumption of risk is not applicable and that plaintiffs are entitled to a comparative negligence trial. We agree with appellants and reverse.
The injured plaintiff, Tommy Brown (age 21), and defendant Chris Faris (age 20) were night stockmen at Warehouse Foods in Tallahassee. After completing their shift at about 7:30 a.m. on May 11, 1983, they bought two six-packs of beer, and Faris drove them in his father's automobile to a friend's house. Until about 2:00 p.m., they remained at the friend's house drinking beer. Faris then drove them to Brown's house for him to change clothes. After leaving Brown's house about 3:00 p.m., they purchased a quart of bourbon through a drive-in window at Rocky's II Lounge and proceeded to Messer Field where some of Faris's friends were playing softball. While sitting in the car in the parking lot, they drank bourbon and coke. Sometime thereafter they went to Big Daddy's Lounge where Brown was denied entrance because of improper identification. Faris then drove them to the Palace Saloon where they finished off the bottle of bourbon in the parking lot. They had a couple of pitchers of beer with some of Faris's friends inside the bar. After awhile, they left the Palace Saloon, and Faris drove them to Bullwinkle's Saloon where they consumed additional alcoholic beverages. While there, Brown suggested that they drive to Dothan, Alabama to visit his girlfriend. They then left Bullwinkle's at about 11:00 p.m., and Faris drove onto Interstate 10 heading west, and Brown fell asleep. Sometime thereafter Brown awakened and observed Faris driving erratically, "swerving all over the road," as Brown stated in his deposition. Feeling sleepy, Faris subsequently pulled onto the shoulder of the interstate near Marianna. They discussed sleeping in the car for awhile but decided to continue their journey, at least as far as Marianna where Brown had friends with whom they could possibly spend the night. According to Brown, Faris suggested that Brown drive to Marianna to avoid their having to sleep on the side of the road, and Brown acquiesced, although he stated to Faris at the time that neither of them should be driving. Faris, on the other hand, testified in his deposition that he suggested to Brown that they "go to sleep for a few minutes," but that Brown "insisted he let him drive." With Brown now at the wheel, Faris fell asleep. After exiting the interstate onto Highway 90 and then driving down a rural road near Marianna, Brown fell asleep at the wheel and lost control of the car which came to rest against a pine tree. Faris suffered minor injuries, but Brown was rendered paraplegic. There were no other vehicles or persons involved in the accident.
Brown admits that he consumed the liquor, agreed to drive the car, and in doing so caused a wreck in which he seriously injured himself. Nevertheless, he now sues his friend, claiming that he was too drunk to be entrusted with the car.
Following discovery, appellees moved for summary judgment, alleging that Brown had expressly assumed the risk of driving while intoxicated. The trial court entered its final summary judgment in favor of appellees, defendants below.

I
After careful consideration, we are of the opinion that the defense of assumption of risk, which survived, to a limited extent only, the Florida Supreme Court's decision in Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977), in the form of "express" assumption of risk, is not applicable as a bar to plaintiffs' action in the present case. First, we observe that the conduct of the injured plaintiff, Brown, in driving when he knew (according to his admission) that he was in no condition to drive, more closely resembles the kind of conduct classified (in the Blackburn analysis, 348 So.2d at 291, 292) as "implied-qualified" assumption of risk, which is the equivalent of contributory negligence, and thus abolished (by *1217 being merged into the defense of contributory negligence) upon the adoption of comparative negligence in Hoffman v. Jones, 280 So.2d 431 (Fla. 1973). Secondly, while the type of conduct embraced by the term "express assumption of risk" has not been fully explicated, post-Blackburn, we are unable to conclude, as a matter of law, that the defense is available to bar a cause of action for negligent entrustment by an intoxicated driver based simply upon his admission that despite his own knowledge of the inadvisability of his operating the vehicle, he nevertheless consented to drive. In our view, an intoxicated person's consent to drive a car under circumstances similar to those present here is far removed from the notion of express assumption of risk as a "contractual concept," as referred to in Blackburn (348 So.2d at 290).
Neither do we find the necessary correlation between the conduct of the injured plaintiff here and that of the plaintiffs in the "contact sports" cases in which it has been held that voluntary participation amounts to an express assumption of risk barring recovery. Kuehner v. Green, 436 So.2d 78 (Fla. 1983) (plaintiff injured in karate take down maneuver); cf. Robbins v. Department of Natural Resources, 468 So.2d 1041 (Fla. 1st DCA 1985) (one-person diving accident). Appellees acknowledge that the express assumption of risk defense has not been extended to cases involving consensual non-sports connected driving of an automobile, but urge us to do so. Appellees argue that just as the availability of the defense in contact sport cases serves the important societal function of encouraging recreational athletic endeavors, so too application of the defense to bar monetary recovery by those who voluntarily become intoxicated and injure themselves would serve the laudable societal purpose of discouraging drunken driving. The obverse to this argument is that allowing this defense to insulate from liability one who places a vehicle in the control of a drunken driver is to encourage this patently dangerous behavior. We hold, as set forth in the discussion that follows, that disposition of this case must be based upon comparative negligence principles.

II
"[E]very court in the land has recognized the liability of an automobile owner for damages resulting when he entrusts his car to a person who is drinking and likely to become intoxicated while operating it." Engleman v. Traeger, 102 Fla. 756, 136 So. 527 (1931) (dictum); see generally, Annot., Liability Based On Entrusting Automobile To One Who Is Intoxicated Or Known To Be Excessive User Of Intoxicants, 19 A.L.R.3d 1175 (1968). With one exception [Rio v. Minton, 291 So.2d 214 (Fla. 2d DCA 1974)], discussed infra, as far as we can determine, the Florida courts have not addressed the application of this doctrine to a case where the injured party was the entrustee.
Appellant cites section 390 of the Second Restatement of the Law of Torts (1965) for the proposition that the entrustee, as well as third persons, has a cause of action under the doctrine of negligent entrustment. This section states in pertinent part, "One who supplies ... a chattel for the use of another whom the supplier knows ... to be likely ... to use it in a manner involving unreasonable risk of physical harm to himself ... is subject to liability... ." Comment (a) to section 390 states that the rule applies to "sellers, lessors, donors or lenders, and to all kinds of bailors, irrespective of whether the bailment is gratuitous or for a consideration." Comment (c) states:
The rule stated in this Section sets out the conditions under which a supplier of a chattel is subject to liability. As always this phrase denotes that a supplier is liable if, but only if, his conduct is the legal cause of the bodily harm complained of and if the person suffering the harm is not subject to any defense such as contributory negligence, which will prevent him from recovering damages therefor. One who accepts and uses a chattel knowing that he is incompetent to use it safely or who associates himself in the use of a chattel by one whom he knows to be so incompetent, or one who *1218 is himself careless in the use of the chattel after receiving it, is usually in such contributory fault as to bar recovery. If, however, the person to whom the chattel is supplied is one of a class which is legally recognized as so incompetent as to prevent them from being responsible for their actions, the supplier may be liable for harm suffered by him, as when a loaded gun is entrusted to a child of tender years. So too, if the supplier knows that the condition of the person to whom the chattel is supplied is such as to make him incapable of exercising the care which it is reasonable to expect of a normal sober adult, the supplier may be liable for harm sustained by the incompetent although such person deals with it in a way which may render him liable to third persons who are also injured.
The language of section 390, which we find is broad enough to cover the facts in the present case, has been only sparingly utilized by the Florida courts. As far as we can determine, only three appellate courts have had occasion to address section 390. Vic Potamkin Chevrolet, Inc. v. Horne, 505 So.2d 560 (Fla. 3d DCA 1987) (automobile dealer not liable for harm caused by customer following consummation of sale); Mullins v. Harrell, 490 So.2d 1338 (Fla. 5th DCA 1986) (no liability where auto mechanic had no suspicion or basis to foresee that entrustee [tenant and possibly part-time employee] was unreliable, dishonest or incompetent); and Rio v. Minton, 291 So.2d 214 (Fla. 2d DCA 1974), cert. den. 297 So.2d 837 (Fla. 1974) (cause of action stated where plaintiffs [parents of deceased minor son] alleged that owner of automobile permitted minor to drive his car when he knew, or should have known, that minor was intoxicated). The Vic Potamkin court approved the proposition that a person who loans a chattel to a known incompetent should be held liable (without specifying whether the class of injured persons included the entrustee) but declined to extend the doctrine of negligent entrustment to automobile dealers who sell cars to customers demonstrating driving incompetence. This same court certified to the Florida Supreme Court the question whether Florida should adopt section 390 and if so, whether it should be construed to extend liability to a seller of a chattel. The Mullins and Rio courts both cited section 390 with approval. In the above cases, the injured party was a passenger, owner (property damage claim), and driver respectively.
Appellant cites cases from other jurisdictions holding that the entrustee (driver) has a cause of action. Blake v. Moore, 208 Cal.Rpt. 703, 162 Cal. App.3d 700 (Cal. 5th DCA 1984) (entrustee was intoxicated adult and owner was passenger in car); Frain v. State Farm Insurance Co., 421 So.2d 1169 (La. 2d Cir.Ct.App. 1982) (entrustee had severe emotional disorder and was under the influence of drugs); Shepherd v. Barber, 20 Mich. App. 464, 174 N.W.2d 163 (1969) (entrustee was nineteen, unlicensed, illiterate, and possibly a non-driver). We find Blake v. Moore, supra, squarely in point, in its holding that an adult drunken driver who injures himself is entitled to a comparative fault trial predicated on the theory of negligent entrustment. Cf. Shultes v. Carr, 512 N.Y.S.2d 276, 127 A.D.2d 916 (N.Y.App.3d 1987) (estate of decedent, whose blood alcohol level had been 0.20 percent, had no viable common-law cause of action for negligent entrustment against automobile owner).
The Second District's opinion in Goodell v. Nemeth, 501 So.2d 36 (Fla. 2nd DCA 1986), while on its face containing language supporting appellees' contention that one who is injured by his own negligence has no cause of action, is distinguishable. There, the court found that the facts as alleged in the complaint conclusively demonstrated that the injury sustained by an intoxicated guest, who intentionally placed a loaded gun to his head and pulled the trigger, proximately resulted solely from his own negligence, and not from the negligence of his host who handed him the gun. We apprehend a vast distinction, in terms of foreseeability of injury, and otherwise, between an injury suffered by one who deliberately places a gun to his head and fires, a voluntary act, and an injury sustained by one who, while driving in an *1219 intoxicated condition, falls asleep and crashes into a tree, an involuntary occurrence.
Upon our review of the authorities cited, we conclude, in agreement with appellants, that this action is properly maintainable under the "negligent entrustment" theory, and that the evidence tending to establish negligence on the part of Brown in consciously deciding to take control of the vehicle, even though he knew he was in no condition to drive, must be weighed and considered, under comparative negligence principles, in relation to the evidence tending to establish negligence on the part of Faris in turning the car over to one whose faculties he either knew or should have known were impaired by drinking. We agree, as argued by appellees, that Rio v. Minton, supra, upon which appellants partially rely, is distinguishable by the fact that the intoxicated driver in that case was a minor, whereas the driver here is an intoxicated adult. This distinction, however, is of only limited significance in our view. One's inability to safely drive an automobile may be caused by any number of incapacitating conditions, minority, and the minor's presumed absence of the ability to be responsible for his or her actions, being but one example. The restatement itself, by its use of the terms "youth, experience, or otherwise," in referring to the incapacity of those whose use of the entrusted chattel may result in harm, indicates the broad range of factors which may generate liability on the part of the entrustor. It is clear, therefore, that the restatement contemplates a cause of action under the negligent entrustment theory by one whose incapacity is based upon intoxication. Thus, as comment (c) explains, if the supplier of the chattel knows that the "condition of the person" to whom the chattel is entrusted is such as to make that person "incapable of exercising the care which it is reasonable to expect of a normal sober adult ...," the supplier may be liable for harm suffered by the incapacitated person.
We thus agree in concept with section 390, although admittedly its application in this case is not without difficulty. We acknowledge that on first impression, the actions of Brown here are such as to logically suggest that he should be held responsible for the consequences of his own negligent actions. As admitted by Brown at his deposition, when he took control of the car he knew that he was drunk, that he was in no condition to drive, and that it was a risky proposition for him to drive in his drunken state. He also testified that nothing prevented the two of them from sleeping it off on the side of the road rather than continuing on their journey. Nevertheless, there are conflicts in the evidence and in the inferences to be drawn therefrom as to numerous matters, including the extent of intoxication of both drivers, as to Faris's knowledge of the extent of Brown's intoxication, and as to the exact circumstances under which Brown came into control of the car. We are persuaded, in view of the existence of the comparative negligence rule in Florida, that the liability for negligent entrustment under the circumstances indicated by the pleadings and the proofs thus far submitted in this case must be determined by the trier of fact after a comparative fault trial.
The judgment appealed is therefore REVERSED, and this cause is REMANDED for further proceedings consistent herewith.
WENTWORTH and JOANOS, JJ., concur.