**William JOYCE, Plaintiff–Appellant,**

v.

**Mary Ann JOYCE, Defendant–Appellee.**

**No. 91–1310.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 8, 1991.

Decided Sept. 17, 1992.

Robert M. Chemers, Scott O. Reed (argued), Richard M. Waris, Matthew J. Egan, Pretzel & Stouffer, Chicago, Ill., for plaintiff-appellant.

David L. Cwik, Karen A. Keefer (argued), Nevoral & Associates, Chicago, Ill., for defendant-appellee.

Before CUMMINGS and RIPPLE, Circuit Judges, and CRABB, District Judge.[*]

RIPPLE, Circuit Judge.

In a complaint filed in Illinois state court, Mary Ann Joyce (Mary Ann) alleged that William Joyce (William) was negligent in entrusting his pleasure boat to John Ivkovich, who was driving the boat when Mary Ann suffered a back injury. William then filed with the federal district court a complaint for limitation of liability under section 183 of the Limitation of Shipowner's Liability Act. See 46 U.S.C.App. §§ 183, 185. The district court dismissed the suit sua sponte for lack of subject matter jurisdiction because it determined that the Act gave it no power to limit William's liability. William appeals, and we affirm. Mary Ann has filed in this court a motion to dismiss for insufficiency of service of process. Because we affirm the district court's dismissal for lack of subject matter jurisdiction, we deny Mary Ann's motion as moot.

I

BACKGROUND

A. *Facts*

On September 15, 1988, William Joyce, an Illinois citizen, purchased a new plea-

---

[*] The Honorable Barbara B. Crabb, Chief Judge for the Western District of Wisconsin, is sitting by designation.

sure boat—a twenty-two-foot Mako-brand boat, powered by a 225–horsepower outboard engine—for approximately $26,000. William docked the boat in Florida. On April 7, 1989, six people, including Mary Ann Joyce and John Ivkovich but apparently not William,[1] were present on the boat as it was being operated in the intercoastal waterway near St. James City, Pine Island, Florida. William had allegedly authorized or permitted Ivkovich to drive the boat, and Ivkovich was in control of the boat as it approached Mile Marker 31. According to the complaint, Ivkovich drove the boat into the wake of a passing boat and thereby caused the passengers, including Mary Ann, to be tossed about. Mary Ann was jolted so severely that she fractured a vertebrae, requiring surgery.

On July 13, 1990, Mary Ann filed a three-count complaint against William and Ivkovich in Illinois state court, seeking recovery for her injuries. Counts one and two alleged that Ivkovich was negligent in operating the boat. Count three—the only count directly relevant to the present case—alleged that William was negligent in entrusting the boat to Ivkovich. Specifically, count three alleged:

6. That prior to the time John Ivkovich operated defendant William Joyce's 1988 Mako boat on April 7, 1989, the defendant William Joyce never inquired of John Ivkovich concerning his experience, training, knowledge or understanding about the operation of such boats.

7. That prior to the time John Ivkovich operated William Joyce's 1988 Mako boat on April 7, 1989, the defendant William Joyce never observed, participated in, instructed or managed John Ivkovich's operation of said boat.

8. That prior to the time John Ivkovich operated William Joyce's 1988 Mako on April 7, 1989, the defendant William Joyce had no personal knowledge as to

John Ivkovich's capability to reasonably and prudently operate such boats while carrying passengers on Florida's Intercoastal Waterways.

9. That, notwithstanding the aforesaid, the defendant William Joyce allowed and permitted the defendant John Ivkovich to operate his Mako boat on April 7, 1989.

. . . .

12. The defendant William Joyce had the duty to inquire of John Ivkovich concerning his training, knowledge, understanding, capability and experience in operating such boats prior to John Ivkovich's operation of William Joyce's boat on April 7, 1989.

13. That the defendant William Joyce negligently entrusted this Mako boat to John Ivkovich who, at said time and place, was inexperienced and incapable of reasonably and prudently operating said boat along and upon Florida's Intercoastal Waterways.

R.1 Ex.A at 6–7.

B. *District Court Proceedings*

On January 3, 1991, William filed a complaint against Mary Ann in the United States District Court for the Northern District of Illinois, Eastern Division, pursuant to 46 U.S.C.App. §§ 183(a), 185, the relevant sections of the Limitation of Shipowner's Liability Act, seeking to limit his liability in Mary Ann's suit to the value of his boat ($26,000).[2] Section 183(a) provides:

(a) The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, *without the privity or knowledge of such owner*

---

1. This fact is not clear from the pleadings and briefs. At oral argument, counsel for William suggested that William was not on the boat.

2. The Act itself refers to the proceeding as a *petition* to limit liability. 46 U.S.C.App. § 185. Procedurally, however, limitations actions un-

der the Act are governed by Supplemental Rules for Certain Admiralty and Maritime Claims, Rule F. These rules refer to the pleading as a *complaint* for limitation of liability. Fed.R.Civ. P.Supp. Rule F(1).

*or owners*, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

46 U.S.C.App. § 183(a) (emphasis supplied). Only four days later, on January 7, 1991—before Mary Ann had filed an appearance or responsive pleading—the district court sua sponte dismissed William's complaint for lack of subject matter jurisdiction. The district court reasoned that, because Mary Ann's cause of action against William was an allegation of William's own direct misconduct in entrusting the boat to Ivkovich (rather than an allegation of vicarious or derivative negligence), either (1) William did entrust the boat to Ivkovich (negligently or not), in which case that entrustment was within William's "privity or knowledge" and the Act does not apply, or else (2) William did not entrust the boat to Ivkovich, in which case Mary Ann's suit will fail and William has no need for the Act to apply. In either case, the court would be powerless to do anything to affect either party.

On January 18, 1991, eleven days after the sua sponte dismissal, Mary Ann's attorney filed a "Special and Limited Appearance" on her behalf with the district court, alleging that the district court lacked personal jurisdiction over her because William never served her with a summons. On January 28, William filed two motions: (1) a motion for leave to file an amended complaint, and (2) a motion to reconsider. William attached an amended complaint that he wished to file, which included the following two new paragraphs:

8. The Plaintiff, WILLIAM JOYCE, was without knowledge that JOHN IVKOVICH was going to operate the boat on the date of the accident or at any other time.

9. The Plaintiff, WILLIAM JOYCE, had no knowledge as to JOHN IVKOVICH'S ability to operate the boat on April 7, 1989, and furthermore, had no reason or duty to determine JOHN IVKOVICH'S ability to operate the boat since the Plaintiff, WILLIAM JOYCE,

did not know JOHN IVKOVICH would operate the boat that day or at anytime. R.8 at 3–4. In response, on February 1, Mary Ann filed her first responsive pleading, a "Motion to Strike and For Costs," in which she reiterated that she had "never been served by the plaintiff with the original Complaint" and argued that William's amendment was "specious" in light of the district court's reasoning in dismissal. On February 4, the district court denied both of William's motions and granted Mary Ann's request for fees with respect to the motions. William then appealed to this court.

On February 6, William filed a Notice of Appeal. On May 1, when Mary Ann filed her appellate brief, she also filed what she termed a Rule 12(b)(5) motion to dismiss for insufficiency of service of process. This court's motions panel ordered the motion to be taken with the case and heard by this panel.

## II

## ANALYSIS

Before this court are both William's appeal of the district court's dismissal for lack of subject matter jurisdiction and Mary Ann's motion to dismiss for insufficiency of service of process. We shall address these in turn.

### A. *Subject Matter Jurisdiction*

█ William contends that the district court erred in assuming that a shipowner's entrustment—negligent or not—is within the shipowner's "privity or knowledge," as used in the Act. To the contrary, William argues, "entrustment of a vessel to another, without reason to suspect incompetence, is not 'privity or knowledge', absent other facts." Appellant's Br. at 11. William further reasons that the district court's mistaken assumption led it to err when it concluded that it lacked subject matter jurisdiction over the case. We review de novo a dismissal for lack of subject matter jurisdiction. *Houck ex rel. United States v. Folding Carton Admin. Comm.*, 881 F.2d 494, 503 (7th Cir.1989), *cert. denied*, 494

U.S. 1026, 110 S.Ct. 1471, 108 L.Ed.2d 609 (1990).[3]

1

■ The Limitation of Shipowner's Liability Act allows district courts, under their admiralty jurisdiction conferred by 28 U.S.C. § 1333(1), to determine whether a shipowner's liability should be limited when that liability may be predicated on an act that was not within the shipowner's "privity or knowledge." The phrase "privity or knowledge" is not defined in the Act, but the history and purpose of the Act shed substantial light on its meaning.

The Act is principally rooted in an English limitation of liability statute (7 Geo. 2, ch. 15) passed by Parliament in 1734, after English shipowners, envious of the limited liability of European shipowners, persuaded Parliament to level the playing field. In 1848, American shipowners were moved by a similar sense of competitive disadvantage after several incidents in which shipowners were held liable for significant damage amounts under the common law rule of common carrier liability, which did not require proof that the owner was negligent or at fault. *See New Jersey Steam Navigation Co. v. Merchant's Bank,* 47 U.S. (6 How.) 344, 12 L.Ed. 465 (1848). In 1851, Congress responded to this concern by enacting the Limitation of Shipowner's Liabil-

---

**3.** The district court characterized its action as a dismissal for want of jurisdiction. However, it did not address, nor do we, the question whether the Limitation of Liability Act provides an independent basis for federal jurisdiction. *See Sisson v. Ruby,* 497 U.S. 358, —— n. 1, 110 S.Ct. 2892, 2894 n. 1, 111 L.Ed.2d 292 (1990). Nor did it address whether 28 U.S.C. § 1333(1), which grants federal courts jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction," confers federal jurisdiction over this petition for limitation of liability based on a personal injury caused by the negligent navigation of a non-commercial vessel on the navigable waters of the United States. *See Sisson,* 497 U.S. at ——, 110 S.Ct. at 2895–98. Rather, as we understand its holding, the district court simply held that, assuming arguendo that one of these statutes normally would support jurisdiction, the claim asserted here, limitation of liability for negligent entrustment, is so insubstantial on its face as to warrant a dismissal on the ground of lack of jurisdiction. *See Langnes v. Green,* 282 U.S. 531, 535, 51 S.Ct. 243, 245, 75 L.Ed. 520 (1931) (quoting *Binderup v. Pathe Exch.,* 263 U.S. 291, 305, 44 S.Ct. 96, 98, 68 L.Ed. 308 (1923)); *see also Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 70, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978) (dismissal on jurisdictional basis justified only where complaint is patently without merit); *Hagans v. Lavine,* 415 U.S. 528, 542–43, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974) (same); *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974) (test is whether claim is "so unsubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court"); *City of Kenosha v. Bruno,* 412 U.S. 507, 511–13, 93 S.Ct. 2222, 2225–26, 37 L.Ed.2d 109 (1973) (failure to name defendants cognizable as "persons" under 42 U.S.C. § 1983 justifies dismissal for want of jurisdiction under 28 U.S.C. § 1343); *Baker v.*

*Carr,* 369 U.S. 186, 199, 82 S.Ct. 691, 701, 7 L.Ed.2d 663 (1962) (dismissal of complaint on ground of jurisdiction permissible only when claim so attenuated and unsubstantial as to be absolutely devoid of merit); *Lewis v. Knutson,* 699 F.2d 230, 237 (5th Cir.1983) (If facial attack defeats jurisdiction, the case should be dismissed under Rule 12(b)(1)); *Williamson v. Tucker,* 645 F.2d 404, 415 (5th Cir.) (collecting cases), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). The general rule and the exception pertinent here were summarized by the court in *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (footnote omitted):

Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction. *Swafford v. Templeton,* 185 U.S. 487, 493, 494 [22 S.Ct. 783, 785, 786, 46 L.Ed. 1005]; *Binderup v. Pathe Exchange,* 263 U.S. 291, 305–308 [44 S.Ct. 96, 98–99, 68 L.Ed. 308]. The previously carved out exceptions are that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose *of obtaining jurisdiction or where such a* claim is wholly insubstantial and frivolous.

ity Act.[4] As the Supreme Court stated in *Norwich Co. v. Wright,* 80 U.S. (13 Wall.) 104, 121, 20 L.Ed. 585 (1871), the purpose of the Act was "to encourage ship-building and to induce capitalists to invest money in this branch of industry." The Act did so by "exempting innocent shipowners from liability, beyond the amount of their interest." *Id.* As Chief Justice Hughes stated in *American Car & Foundry Co. v. Brassert,* 289 U.S. 261, 264, 53 S.Ct. 618, 619, 77 L.Ed. 1162 (1933), "For his own fault, neglect and contracts the owner remains liable." Thus, Congress intended the principal beneficiaries of the Act to be innocent shipowners and investors who were sued for damages caused through no fault or neglect of their own.

In *Coryell v. Phipps,* 317 U.S. 406, 411, 63 S.Ct. 291, 293, 87 L.Ed. 363 (1943), the Supreme Court stated "[i]n the case of individual owners, it has been commonly held or declared that privity as used in the statute means some personal participation of the owner in the fault or negligence which caused or contributed to the loss or injury."[5] Applying this "personal participation" standard, the *Coryell* court further held that "[o]ne who selects competent men to store and inspect a vessel and who is not on notice as to the existence of any defect in it cannot be denied the benefit of the limitation as regards a loss incurred by an explosion during the period of storage...." *Id.* at 412, 63 S.Ct. at 294. *Coryell* implies that the Act was not intended to shield shipowners from liability for the choice of incompetent ship personnel, at least when the owner participates personally in the choice.

Our colleagues in the Fifth Circuit have further defined the contours of the protection afforded shipowners by the Act. They have held that "privity or knowledge" includes not only actual knowledge, but also constructive knowledge—what the ship-owner could discover through reasonable diligence:

> With the duty to make inquiry "the measure" of the knowledge "is not what the owner knows, but what he is charged with finding out." *Great Atlantic & Pacific Tea Co. v. Brasileiro,* 159 F.2d 661, 665 (2d Cir.1947). For " ... knowledge means not only personal cognizance but also the means of knowledge—of which the owner or his superintendent is bound to avail himself—of contemplated loss or condition likely to produce or contribute to loss, unless appropriate means are adopted to prevent it." *The Cleveco,* 154 F.2d 605, 613 (6th Cir.1946).

*Avera v. Florida Towing Corp.,* 322 F.2d 155, 166 (5th Cir.1963). The Fifth Circuit has also held that "[p]rivity and knowledge are deemed to exist where the owner had the means of knowledge or, as otherwise stated, where knowledge would have been obtained from reasonable inspection." *China Union Lines, Ltd. v. A.O. Andersen & Co.,* 364 F.2d 769, 787 (5th Cir.1965), *cert. denied,* 386 U.S. 933, 87 S.Ct. 956, 17 L.Ed.2d 805 (1966). Similarly, the Second Circuit has held that "[n]egligent failure to discover constitutes privity and knowledge within the meaning of the statute." *McNeil v. Lehigh Valley R.R.,* 387 F.2d 623, 624 (2d Cir.1967); *see also Spencer Kellogg & Sons, Inc. v. Hicks (The Linseed King),* 285 U.S. 502, 512, 52 S.Ct. 450, 453, 76 L.Ed. 903 (1932) ("reasonable diligence"); *In re Oil Spill by the AMOCO CADIZ,* 954 F.2d 1279, 1303 (7th Cir.1992) ("The recent judicial trend has been to enlarge the scope of activities within the 'privity or knowledge' of the shipowner, including ... requiring shipowners to exercise an ever-increasing degree of supervision and inspection."); *Application of Theisen,* 349 F.Supp. 737, 740 (E.D.N.Y. 1972) (discussing authorities).

---

**4.** Act of Mar. 3, 1851, ch. 43, 9 Stat. 635 (codified as amended at 46 U.S.C.App. §§ 181–189).

**5.** One commentator notes:

It has been said that "privity" means some fault or neglect in which the owner personally participates, and "knowledge" means personal cognizance or means of knowledge, of which the owner is bound to avail himself, of a contemplated loss or condition likely to cause or contribute to a loss, unless proper means are adopted to prevent it.

3 *Benedict on Admiralty* § 41, at 5–4 (7th ed. 1990).

## 2

■ When we turn to an examination of the law of negligent entrustment, it becomes evident that, if a shipowner knows enough to be liable for negligent entrustment, he knows too much to be eligible for limited liability under the Act. As the parties both point out, regardless of the resolution of the choice of law issue, the essential thrust of the tort of negligent entrustment is that a shipowner can be held liable for negligent entrustment only if he knows or has reason to know that the person being entrusted is incapable of operating the vessel safely. In the words of the Restatement (Second) of Torts § 390 (1965):

One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

This rule is a more precise application of the general rule stated earlier in section 308 of the Restatement:

It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

See also Teter v. Clemens, 112 Ill.2d 252, 97 Ill.Dec. 467, 469, 492 N.E.2d 1340, 1342 (1986) (relying on Restatement (Second) of Torts § 308); Barth v. Massa, 201 Ill. App.3d 19, 146 Ill.Dec. 565, 570, 558 N.E.2d 528, 533 (1990) ("To prevail on a theory of

negligent entrustment the plaintiff must show that the defendants entrusted a dangerous article to another whom they know, or should know, is likely to use it in a manner involving an unreasonable risk of harm to others."); Bensman v. Reed, 299 Ill.App. 531, 20 N.E.2d 910, 911 (1939) ("an owner of property has a duty to use his property so as not to injure another and it is but a sequence of that rule that places the duty upon the owner to deny permission to another to drive his automobile for his own purposes when he knows such person is an incompetent or reckless driver or by the exercise of reasonable diligence he could have known of such incompetency or recklessness"); Gorday v. Faris, 523 So.2d 1215, 1219 (Fla.Dist.Ct.App.1988) (relying on Restatement (Second) of Torts § 390); Foster v. Arthur, 519 So.2d 1092, 1094 (Fla.Dist.Ct.App.1988) (same).

## 3

■ Given the nature of the tort of negligent entrustment, it is clear that the Limitation of Shipowner's Liability Act affords no protection to William. If William knew or had reason to know that Ivkovich should not have been entrusted with the boat, he not only committed the tort of negligent entrustment but also had either knowledge or constructive knowledge sufficient to place him beyond the protection of the Limitation of Liability Act. On the other hand, if William did not entrust the boat to Ivkovich under circumstances in which he knew or should have known of Ivkovich's inability, he will incur no liability for negligent entrustment and, consequently, has no need of the Act's protection. In either case, the district court could not do anything to affect either party and was correct to dismiss the suit for lack of subject matter jurisdiction.[6]

6. We note that Mary Ann alleges in her complaint that "William Joyce had the duty to inquire of John Ivkovich concerning his training, knowledge, understanding, capability and experience in operating such boats." R.1 Ex.A at 7. From recent Illinois and Florida caselaw, it does not appear that either state imposes negligent entrustment liability for failure to inquire; rather, as noted, the standard appears to be whether the owner "knew or should have

known" that the person being entrusted with the object was likely to use it in an unsafe manner. See Teter v. Clemens, 112 Ill.2d 252, 97 Ill.Dec. 467, 492 N.E.2d 1340 (1986); Barth v. Massa, 201 Ill.App.3d 19, 146 Ill.Dec. 565, 558 N.E.2d 528 (1990); Gorday v. Faris, 523 So.2d 1215 (Fla.Dist.Ct.App.1988); Foster v. Arthur, 519 So.2d 1092 (Fla.Dist.Ct.App.1988).

However, even if William were held liable for negligent entrustment for failing to make rea-

**4**

■ Prompt, sua sponte recognition of flaws in subject matter jurisdiction is commendable. Indeed, it is the district court's duty to review the pleadings carefully for such defects. "[T]he federal courts are obliged to police the constitutional and statutory limitations on their jurisdiction." *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir.1986). This court has noted, however, that "sua sponte dismissals without prior notice or opportunity to be heard are 'hazardous.'" *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir.1987) (quoting *Tamari v. Bache & Co.*, 565 F.2d 1194, 1198 (7th Cir.1977), *cert. denied*, 435 U.S.. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978)). Thus, "unless the defect is clearly incurable a district court should grant the plaintiff leave to amend, allow the parties to argue the jurisdictional issue, or provide the plaintiff with the opportunity to discover the facts necessary to establish jurisdiction." *Id.* at 1073.

sonable inquiry, *see Bensman v. Reed*, 299 Ill. App. 531, 20 N.E.2d 910, 911 (1939) (stating that owner of automobile has a duty "to deny permission to another to drive his automobile for his own purposes when he knows such a person is an incompetent or reckless driver or by the exercise of reasonable diligence he could have known of such incompetency or recklessness"), he could not limit his liability under the Act, because his "privity or knowledge" includes information that he would have obtained through reasonable inquiry. *China Union Lines, Ltd. v. A.O. Andersen & Co.*, 364 F.2d 769, 787 (5th Cir.1965), *cert. denied*, 386 U.S. 933, 87 S.Ct. 956, 17 L.Ed.2d 805 (1966) ("Privity and knowledge are deemed to exist where the owner had the means of knowledge or, as otherwise stated, where knowledge would have been obtained from reasonable inspection."); *McNeil v. Lehigh Valley R.R. Co.*, 387 F.2d 623, 624 (2d Cir.1967) ("Negligent failure to discover constitutes privity and knowledge within the meaning of the statute."); *see also Avera v. Florida Towing Corp.*, 322 F.2d 155, 166 (5th Cir.1963).

7. Even if the district court was wrong in characterizing its action as a dismissal for want of jurisdiction, *see supra* note 3, we nevertheless would sustain its disposition of the case. *See Miles v. Armstrong*, 207 F.2d 284, 286 (7th Cir. 1953). In the circumstances here, the complaint could not have been amended to state a claim to which the Limitation of Liability Act could be applied. As we noted in *Shockley*, "in this case, a remand would be futile, because,

In the present case, the defect was incurable. Thus, while we reiterate the caution necessary in sua sponte dismissal without notice of hearing, we find no error in the district court's action in this case.[7]

### B. *Service of Process*

Because of the district court's prompt, sua sponte dismissal, Mary Ann presented to this court, rather than the district court, her motion to dismiss for insufficiency of service of process. Mary Ann alleges that William never served her with a summons and complaint pursuant to Federal Rule of Civil Procedure 4. Although William does not deny that he failed to serve Mary Ann, he argues that (1) Mary Ann submitted to the court's jurisdiction when she entered her appearance in the district court, (2) defective service is not a ground for dismissal absent a showing of prejudice, and (3) Mary Ann's failure to raise the jurisdictional challenge until now constitutes waiver. Because none of these defenses is meritorious, we could grant Mary Ann's motion

even after [any] proposed amendment, the complaint as a matter of law fails to state a claim upon which relief can be granted." 823 F.2d at 1073. *See also White v. Elrod*, 816 F.2d 1172, 1176 (7th Cir.) (no need to "stand on ceremony" and remand to change judgment from dismissal of the complaint for want of jurisdiction to judgment for defendants on the merits), *cert. denied*, 484 U.S. 924, 108 S.Ct. 286, 98 L.Ed.2d 246 (1987); *Howland v. Kilquist*, 833 F.2d 639 (7th Cir.1987) (remand would be "an exercise in futility and a waste of judicial resources").

Because the district court properly held that, under *no* set of facts would the Limitation of Liability Act's provisions be applicable in a suit based solely on the tort of negligent entrustment, it had no occasion to decide whether it ought to stay its proceedings pending the outcome of the state suit. *See Cincinnati Gas & Electric Co. v. Abel*, 533 F.2d 1001, 1005 (6th Cir.) (Congress, in 1936 amendments, intended to give federal courts exclusive jurisdiction of limitation of liability complaints, but federal court may stay its proceedings pending outcome of the underlying state suit), *cert. denied*, 429 U.S. 858, 97 S.Ct. 158, 50 L.Ed.2d 136 (1976); *Ohio River Co. v. Carrillo*, 754 F.2d 236 (7th Cir.1985) ("A shipowner seeking the Act's protection must file a complaint in federal court within six months of receipt of notice of a claim."); *see also In re Vatican Shrimp Co.*, 820 F.2d 674 (5th Cir.) (discussing authorities), *cert. denied*, 484 U.S. 953, 108 S.Ct. 345, 98 L.Ed.2d 371 (1987).

as an alternative holding. However, because we uphold the district court's dismissal for lack of subject matter jurisdiction, Mary Ann's motion is moot.

## Conclusion

For the foregoing reasons, we affirm the judgment of the district court dismissing the suit for lack of subject matter jurisdiction.

AFFIRMED.

CRABB, Chief District Judge, dissenting.

I agree that the district court should take no action in this case, but I am not convinced it decided correctly that it lacked the jurisdiction to act or that the complaint should have been dismissed when it was. 46 U.S.C.App. § 183(a) gives William the right to limit his liability to the value of his interest in the boat (assuming as I do for the purpose of this opinion that the statute applies to pleasure boats; good reasons exist for not applying it to pleasure boats, which are far more like automobiles in terms of the potential tort liability of their owners and which present none of the commercial justifications for limitation of liability that led to the enactment of the statute. *See Complaint of Sisson,* 867 F.2d 341, 347 (7th Cir.1989)). The district court had subject matter jurisdiction to entertain William's complaint. *Langnes v. Green,* 282 U.S. 531, 539, 51 S.Ct. 243, 246, 75 L.Ed. 520 (1931) (district court not deprived of jurisdiction over § 183(a) complaint by facts that record disclosed privity and knowledge of shipowner and only one claim filed) (citing *White v. Island Transp. Co.,* 233 U.S. 346, 351, 34 S.Ct. 589, 591, 58 L.Ed. 993 (1914)). On the other hand, Mary Ann had a right to bring her action in state court to seek the common law remedy to which she is entitled. *Id.* If there is only one claim against William arising out of the April 7, 1989 incident (which appears to be the case), the state court is as capable as the federal court to entertain both Mary Ann's common law claim and William's claim for limitation of liability. *Id.* at 540, 51 S.Ct. at 246. Thus, assuming that Mary Ann's claim was the only one, it was appropriate for the district judge to exercise his discretion not to proceed with the case and let the state court deal with it. I part company with him and with the majority only to the limited extent that he dismissed the complaint at that time rather than abstaining. As a legal matter, the court did have subject matter jurisdiction, and as a practical matter, there remains the unlikely but possible outcome that the state court might not recognize William's right to limit his liability in circumstances in which the right should exist.

Of course, other reasons may exist for dismissing William's complaint. His allegations fell short of what is required to show entitlement to limitation of liability, and he had service problems. However, those deficiencies would have to await the proper motions to dismiss; they could not be acted upon by the court sua sponte.